**Alexandria**

THOMAS LYNN GROGG

v.

COMMONWEALTH OF VIRGINIA

No. 0516-86-4

Decided August 16, 1988

COUNSEL

William B. Reichhardt (Hall, Surovell, Jackson, & Colten, P.C., on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Thomas Lynn Grogg, a minor, was convicted in a jury trial of first degree murder and use of a firearm in the commission of murder. The trial court sentenced Grogg to forty years and two years, respectively, for these offenses. Grogg raises the following issues on appeal: (1) whether the circuit court conducted a *de novo* hearing of the juvenile court order that transferred jurisdiction to the circuit court; (2) whether a juvenile tried and convicted as an adult has an appeal of right to the Court of Appeals of Virginia; (3) whether Grogg was denied effective assistance of counsel during the pre-trial stages of this case in Florida[1]; and (4) whether Grogg's inculpatory confession given to Virginia police officers during his detention in Florida should have been suppressed. For the reasons that follow, we affirm Grogg's convictions.

I. Facts

Grogg was initially arrested on October 26, 1985, in Sarasota, Florida. The Sarasota police were alerted by teletype report of an outstanding Virginia warrant charging Grogg with grand larceny of an automobile. At that time, Grogg was nine days shy of his sixteenth birthday. A Florida detention petition, dated October 27, 1985, indicated that Grogg was taken into custody at 8:50 p.m. on Saturday, October 26, 1985, that he was alleged to be delinquent because he was a fugitive from justice wanted for grand larceny, and that no parent or adult relative was available to provide proper care. A Flordia judge signed the petition and ordered that Grogg be placed in jail. Within forty-eight hours of his arrest, Grogg executed a waiver of extradition and was returned to Virginia.

Joseph A. Hughes, an officer with the Fairfax County Police Department, testified that the arresting officer in Florida advised Grogg of his constitutional rights as mandated by *Miranda v.*

---

[1] We decline to address Grogg's claim that he was denied effective assistance of counsel because all matters relating to that issue are not fully contained in the record before us. *See* Code § 19.2-317.1; *Correll v. Commonwealth,* 232 Va. 454, 469-71, 352 S.E.2d 352, 361-62 (1987); *Payne v. Commonwealth,* 5 Va. App. 498, 504, 364 S.E.2d 765, 769 (1988). Furthermore, we note that the thrust of Grogg's ineffective assistance of counsel claim is wholly embodied in his sixth and fifth amendment challenge to the admissibility of his confession under the last issue raised in this appeal.

*Arizona*, 384 U.S. 436 (1966), and that Grogg gave a statement to the Florida police officer. The arresting officer advised Grogg of his rights at the time of arrest, and also three hours later, prior to the time Grogg gave a statement to the officer. This statement was not entered into evidence. An attorney from the public defender's office was appointed to represent Grogg on the morning of Sunday, October 27, 1985. The public defender, John Jabro, testified that he went to the jail at approximately 8:00 a.m. to interview all the prisoners arrested during the previous twenty-four hour period, including Grogg. These prisoners were to attend an "advisory proceeding" before a Florida Circuit Court judge.

Jabro met briefly with Grogg prior to the advisory proceeding. Jabro testified he was "startled" to learn that Grogg was being held in an adult facility and that he was attending an adult proceeding, although he conceded that some allowance may be made for juveniles to be held in adult facilities. At the advisory proceeding, Jabro represented approximately fifteen to eighteen adults. Under Florida law, the advisory proceeding is the first appearance of a person who has been unable to extricate himself from jail by posting bond. The court essentially examines the crime for which the person is charged, examines the bond set, informs the defendant of his fifth amendment rights and the charges against him, and decides whether to set bond, modify bond or release the prisoner on his own recognizance. *See* Rules 3.130 and 3.131, Fla. R. Crim. P.

Jabro spoke with Grogg "just a matter of moments." He stated Grogg was "rather unresponsive." At first, Jabro thought Grogg was being uncooperative, but after conversing further, Jabro testified that Grogg appeared to be "dazed." Jabro advised Grogg that he was being charged as a fugitive from justice, that he would be involved in an extradition proceeding, that he should not speak to anyone but his attorney, and that an attorney would probably be appointed to represent him when he returned to Fairfax County. When Jabro told Grogg not to speak with anyone, Grogg responded, "I already have," apparently referring to his prior statement to the Florida police officer. Jabro did not give Grogg a business card or leave him his name and phone number.

Grogg was brought into court with the adult prisoners and the Florida judge read all of the prisoners their fifth amendment rights simultaneously. The prisoners then individually walked to a

podium and signed a form indicating that an advisory hearing had been conducted, and that the judge had read them their rights. No individual colloquy occurred between the trial judge and Grogg.[2] When Grogg was called by the court, he walked to the podium and signed the sheet as instructed. After the hearing was concluded, Grogg was returned to his cell. Jabro did not see or speak with Grogg until October 28, when the extradition hearing occurred. Jabro represented Grogg at that hearing.

On October 28, 1985, prior to the extradition hearing, Officer Hughes, accompanied by Officer Pfeiff, went to the Sarasota County jail to question Grogg. Hughes contacted Sargeant Jack Vinna of the Sarasota Police Department about talking with Grogg. Hughes testified that Sargeant Vinna contacted juvenile authorities to obtain permission for Hughes to talk with Grogg. In addition to the two Fairfax officers, an officer of the Sarasota Police was present. Grogg's attorney was not present, nor was he advised that the officers were conducting the interview. The officers advised Grogg of his *Miranda* rights at 10:26 a.m. The warning and consent form indicated that the officers were investigating a homicide. Grogg signed the waiver and consent form which indicated that he could read and write, was not under the influence of drugs or alcohol, and that he had a seventh grade education. The colloquy which occurred between Officer Hughes and Grogg involved Hughes reciting the questions on the form and Grogg answering yes to the questions. Hughes first asked a series of questions and took notes. The officers conducted a second interview at 11:18 a.m. during which they tape recorded the statement. The interview ended at 11:40 a.m. At the beginning of the statement, the following conversation took place:

Officer Hughes: Prior to this taped statement, I advised you of your constitutional rights which were read from the form. Did you understand those rights?

Grogg: Yes.

Officer Hughes: Do you still understand those rights?

---

[2] Pursuant to Rule 8.290, Fla. R. Juv. P., a judge is required to conduct an individual colloquy with a juvenile defendant to ensure that the juvenile comprehends the nature of his rights. However, the judge is not required to conduct an individual colloquy at the advisory proceeding for adult prisoners. Rule 3.130, Fla. R. Crim. P.

Grogg: Yes.

Officer Hughes: All right, did you choose to speak to us freely?

Grogg: Yes.

Officer Hughes: There were no threats or promises made to you?

Grogg: No.

Grogg then confessed to his involvement in the crime. Grogg's motion to suppress the inculpatory statement was denied by the trial court.

## II. Transfer Hearing

Grogg contends that the circuit court failed to conduct a *de novo* hearing of the juvenile court order that transferred jurisdiction to the circuit court. He specifically argues that the court erred when it relied upon transcripts and written records from the juvenile court to determine that probable cause existed to believe that Grogg committed the act alleged. Based upon our careful review of the transcript of the transfer hearing in the circuit court, we conclude that the circuit court in fact conducted a *de novo* hearing and made an independent determination that Grogg should be transferred for criminal proceedings in that court. Furthermore, we hold that a *de novo* hearing was proper.

Code § 16.1-269 embodies the statutory scheme for transferring jurisdiction from the juvenile court to the circuit court in those cases in which a child fifteen or more years of age is alleged to have committed an offense that would be a felony if committed by an adult and the juvenile court decides the child is not amenable to treatment or rehabilitation as a juvenile. The authority of the juvenile court either to retain jurisdiction or to transfer jurisdiction in serious cases protects the interests of both the child and the public. Code § 16.1-269(E) permits a review by the circuit court of a decision by the juvenile court to retain jurisdiction in certain cases in which the Commonwealth's Attorney deems it in the public interest. The circuit court upon proper hearing may

sustain the decision of the juvenile court or permit the Commonwealth's Attorney to seek an indictment. Significantly, this statute does not address an appeal by the child from a decision of the juvenile court to transfer jurisdiction to the circuit court.

The juvenile court's decision to transfer jurisdiction to the circuit court is a judgment affecting the interests of the child. Code § 16.1-296 provides in pertinent part: "From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken in accordance with the provisions of Chapter 7 (§ 16.1-123.1 et seq.) of Title 16.1." Code § 16.1-136 provides in pertinent part: "Any appeal taken under the provisions of this chapter [Chapter 7] shall be heard de novo in the appellate court . . . ." Thus, we agree with Grogg that a circuit court must conduct a *de novo* hearing when considering an appeal of a child from a decision of the juvenile court to transfer jurisdiction to the circuit court for the purpose of trying the child as an adult in a criminal proceeding.

 "A *de novo* hearing means a trial anew, with the burden of proof remaining on the party with whom it rested in the juvenile court." *Box v. Talley*, 1 Va. App. 289, 292, 338 S.E.2d 349, 351 (1986). " '[A]n appeal to the circuit court from a court not of record under Code § 16.1-136 annuls the judgment of the inferior tribunal as completely as if there had been no previous trial . . . [S]uch a trial *de novo* in the circuit court grants to a litigant every advantage which would have been his had the case been tried originally in such court.' " *Id.* at 292, 338 S.E.2d at 351 (quoting *Walker v. Department of Public Welfare*, 223 Va. 551, 563, 290 S.E.2d 887, 890 (1982)). Thus, in the context of an appeal from a juvenile court decision to transfer jurisdiction of a child for criminal proceedings in the circuit court, the *de novo* provision of Code § 16.1-136 requires that the circuit court make an independent determination to remand the case to the juvenile court or to permit the Commonwealth's attorney to seek an indictment. The burden of proof remains on the Commonwealth to establish probable cause to believe that the child committed the act alleged and the other factors which must be considered by the court pursuant to Code § 16.1-269. However, because this determination by the circuit court is not a trial on the merits and pursuant to Code § 16.1-272 the circuit court retains the discretion

to deal with the transferred child in the manner prescribed by Code § 16.1-279 for disposition of cases in the juvenile court, it is permissible for the circuit court to review the transcripts and written records from the juvenile court. The critical requirement is that the circuit court make an independent determination on the issue of transfer.

In Grogg's case, the transcript of the juvenile court's probable cause hearing, the transcript of the hearing on the probation officer's report, and the entire juvenile court file were admitted into evidence without objection. The circuit court made findings of fact required under Code § 16.1-269, specifically addressing each of the statutory prerequisites for transfer. The circuit court further stated: "I certify him, sir. I agree with the findings made by the juvenile court back on December 13, and I *independently* from the review of the testimony and evidence make the same finding here today." (emphasis added).

Therefore, the circuit court met the requirements of *de novo* review when it independently determined from the evidence introduced by the Commonwealth and by Grogg that Grogg should be transferred to the circuit court for criminal proceedings in that court.

## III.

Grogg contends that his appeal involves this Court's jurisdiction under Code § 17-116.05(3)(e) and should be an appeal of right because his conviction involves a final judgment or decree of the circuit court involving the "control or disposition of a child." The Commonwealth argues that Code § 17-116.05(3)(e) relates only to this Court's civil jurisdiction and because Grogg was convicted of criminal offenses and sentenced as an adult, the judgment of conviction is criminal in nature and does not involve the "control or disposition of a child."[3]

■ The parameters of the appellate jurisdiction of this Court are set forth in Code §§ 17-116.05 and 17-116.05:1. Code § 17-

---

[3] We do not address the Commonwealth's further argument that Grogg's claimed entitlement to an appeal of right is mooted by our granting of Grogg's petition for appeal because we hold that Code § 17-116.05:1 is controlling and Grogg is not entitled to an appeal of right.

116.05 defines the criminal jurisdiction. Cases over which this Court has appellate jurisdiction are defined with reference to the subject matter of the case. *White v. Garraghty*, 2 Va. App. 117, 123, 341 S.E.2d 402, 405 (1986). While the present case initially involved the control and custody of a child, when Grogg was convicted of a criminal offense and sentenced as an adult, the subject matter of his appeal from the circuit court became criminal, not civil. Accordingly, we hold that his appeal is properly an appeal by petition pursuant to Code § 17-116.05:1.[4]

## IV. Suppression of Confession

We turn last to the issue whether the trial court erred when it ruled admissible a confession Grogg gave to Virginia police officers during his incarceration in the Florida jail. Grogg argues that the confession should have been suppressed upon the grounds that it was obtained in violation of his sixth and fifth amendment rights and because pertinent Florida and Virginia statutes were allegedly violated by the police. We address these arguments in turn.

### A. Sixth Amendment

■ The right to assistance of counsel in criminal prosecutions is guaranteed by the sixth and fourteenth amendments. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). "[T]he right to counsel . . . means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Id.* (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

[G]iven the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings "is far from the mere formalism." It is only at that time that the government has committed itself to prosecute, and only then that the adverse positions of govern-

---

[4] We do not address whether an appeal from a circuit court decision imposing a juvenile disposition pursuant to Code § 16.1-279 would be an appeal of right or by petition.

ment and defendant have been solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.

*United States v. Gouvia*, 476 U.S. 180, 189 (1984)(citation omitted). "Recognizing that the right to assistance of counsel is shaped by the need for assistance of counsel," *Maine v. Moulton*, 474 U.S. 159, 170 (1985), the Supreme Court has extended the sixth amendment right to counsel to earlier, critical pre-trial stages "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224 (1967).

Nonetheless, on the issue when the right to counsel attaches, the Supreme Court steadfastly has drawn the line at the point where adversary judicial proceedings are commenced, "at least after the initiation of formal charges," because "a person who had previously been just a 'suspect' has become an 'accused' within the meaning of the Sixth Amendment. . . ." *Michigan v. Jackson*, 475 U.S. 625, 632 (1986). Thus, once charges are brought, by way of formal charge, preliminary hearing, indictment, information, or arraignment, criminal proceedings have been commenced and "the government's role shifts from investigation to accusation." *Moran v. Burbine*, 106 S. Ct. 1135, 1146 (1986).

Grogg contends that his sixth amendment right to counsel was violated when the Fairfax police officers interrogated him without notice to his court-appointed attorney or other independent adult. Grogg argues that the Florida advisory hearing was essentially an arraignment, at which time the right to counsel attached. He argues that once the public defender had been appointed to represent him and the authorities took his statement without notification to or the presence of his attorney, his right to counsel was violated. The Commonwealth argues that the right to counsel had not yet attached and that Grogg's sixth amendment rights were not violated. We therefore begin our inquiry into the threshold issue whether the Florida advisory proceeding represented a critical stage at which the right to counsel had attached.

We must look to state law to determine when adversary judicial proceedings have commenced. *See Edwards v. Arizona*, 451

U.S. 477, 480 n.7 (1981); *Kirby v. Illinois*, 406 U.S. 682, 688 (1977). We will assume, without deciding, that Florida law governs the determination of this issue.[5]

Grogg attended an advisory proceeding, which is required under Rule 3.130, Fla. R. Crim. P. Rule 3.130 provides that every arrested person must be taken before a judicial officer within twenty-four hours of arrest. During this first appearance, the judge or magistrate informs the defendant of the charges against him, provides him with a copy of the complaint, and advises him of his right to remain silent, right to counsel, right to appointed counsel if he is indigent, and right to communicate with counsel, family, or friends. Grogg received appointed counsel, as required under Rule 3.130, and Grogg met briefly with the public defender prior to the advisory hearing. The judge presiding over the advisory proceeding determines whether the defendant should be released and the conditions of release, if any. Rule 3.131, Fla. R. Crim. P. The State is not represented by counsel, no evidence is presented, and the defendant is not required to plead to the charges.

We do not believe the advisory proceeding required under Florida law signaled the initiation of adversary judicial proceedings. Pursuant to Rule 3.140, Fla. R. Crim. P., "prosecution shall be solely by indictment or information." Under Florida law, adversary judicial proceedings commence when an indictment or information is filed against a defendant; it is at that time that the sixth amendment right to counsel attaches. *Traylor v. State*, 498 So. 2d 1297, 1300 (Fla. Dist. Ct. App. 1986); *see Anderson v. State*, 420 So. 2d 574, 576 (Fla. 1982)(adversary proceedings commence with indictment of defendant); *see also State v. Hoch*, 500 So. 2d 597, 599 (Fla. Dist. Ct. App. 1986). Although a warrant for Grogg's arrest had been issued in Virginia, he was not formally charged in the advisory proceeding. A preliminary hearing had not yet been conducted to determine probable cause. No indictment or information had been secured and Grogg had not been arraigned. In short, at the time of the advisory proceeding no formal charges had been brought. Grogg merely had been arrested *pursuant to a valid arrest warrant*, taken into custody by

---

[5] Neither the Commonwealth nor Grogg addressed this conflict of laws issue. Grogg contends that his right to counsel had attached under Florida law. We do not address or decide when the right to counsel attaches under Virginia law.

Florida authorities, and taken before a Florida judge for an advisory proceeding. While the court appointed counsel to represent Grogg, the mere existence of an attorney-client relationship does not trigger the protection of the sixth amendment. *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (purpose of sixth amendment is not to "wrap a protective cloak around the attorney-client relationship" or "to protect a suspect from the consequences of his own candor"). We hold that Grogg's sixth amendment right to counsel had not attached at the time the police officers conducted the interrogation, and therefore, the police did not violate Grogg's rights under the sixth amendment when they conducted the custodial interrogation.[6]

## B. Fifth Amendment

■ "In order to be able to use statements obtained during custodial interrogations of the accused, the State must warn the accused prior to such questioning of his right to remain silent and of his right to have counsel, retained or appointed, present during interrogation." *Fare v. Michael C.*, 442 U.S. 707, 717 (1979). The right to counsel during custodial interrogation and the constitutional privilege against self-incrimination are rights guaranteed to juveniles. *In re Gault*, 387 U.S. 1, 55 (1967). Just as adults may waive their fifth amendment constitutional rights, so may juveniles. *Fare*, 442 U.S. at 724-25.

■ A heavy burden rests upon the Commonwealth to demonstrate that the accused has made a valid waiver. *Miranda*, 384 U.S. at 475; *see Rodgers v. Commonwealth*, 227 Va. 605, 608, 318 S.E.2d 298, 300 (1984); *Green v. Commonwealth*, 223 Va. 706, 710, 292 S.E.2d 605, 607 (1983). Courts must indulge every reasonable presumption against waiver. *Cf. Brewer v. Williams*, 430 U.S. 387, 404 (1977). When determining whether the accused has made a valid waiver, the Commonwealth must demonstrate that the waiver "not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege . . . ." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

---

[6] Because we hold that Grogg's sixth amendment right to counsel had not yet attached, we do not address whether Grogg made a valid waiver of his right to counsel under the sixth amendment.

■ "The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or . . . whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.' " *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). The Commonwealth, however, must prove not only that the waiver was voluntary, but also knowing and intelligent. *Edwards*, 451 U.S. at 483-84. In *Edwards*, the Supreme Court emphasized that the right to counsel under the fifth amendment exemplified "those rights requiring the special protection of the knowing and intelligent waiver standard." *Id.* at 483 (citing *Schneckloth*, 412 U.S. at 241).

■ In deciding the question whether an accused has knowingly and intelligently waived these rights established in *Miranda*, and thus whether statements made by an accused during custodial interrogation are admissible against him, an inquiry into the totality of the circumstances surrounding the interrogation must be made. *Fare*, 442 U.S. at 725 (citing *Miranda*, 384 U.S. at 475-77). The Supreme Court held in *Fare* that the totality of circumstances approach is appropriate where the issue is whether a juvenile has made a valid waiver. 442 U.S. at 725. Our Supreme Court adopted this approach in *Harris v. Commonwealth*, 217 Va. 715, 719-20, 232 S.E.2d 751, 754-55 (1977), and *Green v. Commonwealth*, 223 Va. 706, 710, 292 S.E.2d 605, 607-08 (1982).

> The totality [of the circumstances] approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Fare*, 442 U.S. at 725; *see also Green*, 223 Va. at 710, 292 S.E.2d at 607; *Harris*, 217 Va. at 719-20, 232 S.E.2d at 755.

■ Even though the United States Supreme Court and our Supreme Court have adopted the totality of the circumstances approach, many courts have cautioned that greater protection and care may be required when a juvenile is involved. As the Supreme Court held in *Gault*, "the greatest care must be taken to assure

that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or dispair." 387 U.S. at 55; *see also Galloegos v. Colorado*, 370 U.S. 49, 54-55 (1962); *Haley v. Ohio*, 332 U.S. 596, 599-600 (1948); *Williams v. Peyton*, 404 F.2d 528, 530-31 (4th Cir. 1968).

Grogg concedes that a juvenile may knowingly and voluntarily waive his right to remain silent and his right to counsel, but he contends that his waiver was not knowing and intelligent because his court-appointed attorney was not notified or present and his parents or other neutral adult were not present. He further argues that the surroundings and environment of the interrogation at the adult facility created "an atmosphere of coercion and pressure." Finally, he maintains that the officer simply read the contents of the waiver and consent form without conducting colloquy to determine whether Grogg fully understood the rights that he ultimately waived.

We adhere to the view that it is desirable to have a parent, counsel or some other interested adult or guardian present when the police interrogate a juvenile, and it is even more desirable to have an interested adult present when a juvenile waives fundamental constitutional rights and confesses to a serious crime. However, it is well established that the mere absence of a parent or counsel does not render a waiver invalid. *See In re Gault*, 387 U.S. at 55 (if counsel not present when admission is volunteered, great care must be taken to assure the voluntariness of admission); *Rone v. Wyrick*, 764 F.2d 532, 535 (8th Cir. 1985)(parental presence not mandatory for juvenile confession to be admissible against him); *United States v. White Bear*, 668 F.2d 409, 412 (8th Cir. 1982)(presence of parents or counsel not necessary to obtain a valid confession of juvenile). We hold that, in the case of a juvenile, the presence or absence of a parent, guardian, independent interested adult, or counsel is a circumstance and factor to be considered in the totality of the circumstances when determining whether a waiver is knowing and intelligent. The absence of a parent or counsel is "a circumstance that weigh[s] against the admissibility of the confession." *Miller v. Maryland*, 577 F.2d 1158, 1159 (4th Cir. 1978).

The detention petition filed following Grogg's arrest indicated there was no parent or adult relative available to properly care for

Grogg. Grogg's parents were in Virginia. His mother did not have a telephone, and his father apparently could not be contacted. Grogg gave the juvenile authorities the name and telephone number of his sister, and he was given an opportunity to call his sister, but declined to do so. The trial court found that no adult member of Grogg's family was available, other than his brother, who had already given a statement implicating Grogg as the murderer. Under these circumstances, therefore, the absence of a parent or other interested adult weighs less heavily against the admissibility of the confession.

As to Grogg's argument that the environment in which the interrogation was conducted was "coercive," our review of the record convinces us that this contention is without merit. Officer Hughes questioned Grogg at the Sarasota County Jail on October 28, 1985. Grogg was brought from a holding cell to an interview room, which was approximately ten feet by ten feet or ten feet by twelve feet. In addition to Officer Hughes, Officer Pfeiff and a representative of the Sarasota Police Department were present. The officers wore plain clothes and Grogg was not handcuffed. Officer Hughes asked substantially all the questions except for a couple of questions asked by Officer Pfeiff. Grogg's demeanor was calm and the interrogation was not particularly lengthy, lasting approximately one hour. Grogg acknowledged that Officer Hughes did not threaten him in any manner. The officers did not threaten or coerce Grogg and no promises or inducements were made to elicit his confession.

At the time Grogg confessed, he was a week shy of his sixteenth birthday. Grogg had completed the seventh grade. He was in good physical health and at the time of the confession was not under the influence of any drugs or alcohol. He had one prior court appearance in juvenile court. A Wechsler Intelligence test was conducted in September 1983, and the psychologist conducting the test concluded that Grogg's level of cognitive functioning fell within the average range. His verbal comprehension ability fell within the low average range while his perceptual organizational ability fell within the high average range.

When Grogg was arrested, he was advised of his *Miranda* rights by the investigating officer, and was again advised of his rights some three hours later, prior to the officer's taking a statement from him. At the subsequent advisory proceeding, a Florida

Circuit Court judge again advised Grogg of his fifth amendment rights as required under *Miranda*. Officer Hughes advised Grogg of his rights prior to taking an oral statement. The waiver and consent form that Grogg signed indicated the officers were investigating an homicide and Officer Hughes specifically asked Grogg if he understood what the word "homicide" meant. Grogg acknowledged that he did. When Officer Hughes asked Grogg to sign the waiver and consent form, Hughes testified that he asked Grogg if he understood his rights, whether he was willing to talk to the officers without an attorney present, and then he requested that Grogg sign the waiver and consent form. Additionally, the public defender appointed to represent Grogg informed him he should not talk to anybody.

Prior to giving the taped statement to Officer Hughes, Officer Hughes read each individual *Miranda* warning and asked Grogg if he understood the right. The waiver and consent form contained simple, understandable language.

Based on our reading Grogg's testimony, he was cognizant and conscious of his environment, and the dates and times of the events surrounding his detention in Florida. The following colloquy between the Commonwealth's Attorney and Grogg occurred during cross-examination at a pre-trial hearing.

Commonwealth's Attorney: Q. And when you went to see Investigator Hughes, he told you once again you had the right to remain silent?

Grogg: A. Yes

Commonwealth's Attorney: Q. He told you that you didn't have to talk to him if you did not want to?

Grogg: A. Yes.

Commonwealth's Attorney: Q. He told you that anything you said could be used against you?

Grogg: A. Yes.

Commonwealth's Attorney: Q. And you had the right to a lawyer?

Grogg: A. Yes.

Commonwealth's Attorney: Q. Did he say if you didn't have the money the state would get a lawyer for you?

Grogg: A. Yes

Commonwealth's Attorney: Q. He told you, you had the right to have a lawyer present when you talked to him if you want one?

Grogg: A. Yes.

Commonwealth's Attorney: Q. Did he threaten you in any way?

Grogg: A. No.

Commonwealth's Attorney: Q. At the time you talked to him you knew you could say nothing if you wanted to?

Grogg: A. Yes.

Commonwealth's Attorney: Q. Isn't it a fact that you really wanted to get this whole thing off your chest?

Grogg: A. Yes.

Commonwealth's Attorney: Q. And that is why you talked to him?

Grogg: A. Yes.

Grogg was advised of his fifth amendment rights as required by *Miranda* on no fewer than four occasions, including once by a judge. Although Grogg contends that the officers questioning him failed to conduct a colloquy sufficient to ensure that he understood his rights, the record discloses that the officers made a conscientious effort to ensure that he understood his rights. After each respective right was read to him, Grogg was asked if he understood and was asked generally if he had any questions. There is no indication in the record that he failed to understand what the officer told him, and he conceded this when testifying in a pre-trial hearing.

In view of the totality of the circumstances, we believe that Grogg was of sufficient age, intelligence, and experience to understand the rights he was waiving and the consequences of the waiver. Furthermore, it is apparent that the waiver was voluntary because no coercion or threats were implied by the police, and the interrogation was not lengthy. Thus, we hold that under the totality of the circumstances, Grogg made a voluntary, knowing and intelligent waiver of his fifth amendment rights. Accordingly, the trial court properly ruled admissible the inculpatory statement he gave to the police officers.

## C. Florida and Virginia Statutes

Finally, we turn to whether purported violations of relevant Florida and Virginia statutes require suppression of Grogg's confession. Grogg argues that the police officer's failure to comply with Rule 8.290, Fla. R. Juv. P., renders inadmissible Grogg's inculpatory statement. Grogg also argues that the "protective guidelines" established under Code §§ 16.1-250 and 16.1-266 were not followed and, therefore, Grogg's right to counsel was not adequately protected. We will address these arguments in turn.

Rule 8.290, Fla. R. Juv. P., provides in pertinent part:

b. Waiver of Counsel.

██ A child shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the child's comprehension of that offer and his capacity to make that choice intelligently and understandingly has been made.

Assuming, without deciding, that this statute was violated, a purported violation of this statute does not render a confession obtained from a juvenile inadmissible per se. The Supreme Court of Florida has adopted a totality of the circumstances approach in determining whether a confession given by a juvenile is admissible against him. *See State v. S.L.W.*, 475 So. 2d 1231, 1232 (Fla. 1985); *see also, State v. Cartwright*, 444 So. 2d 1049, 1051 (Fla. Dist. Ct. App. 1984)(violation of Rule 8.290 does not render confession inadmissible per se). *Cf. Doerr v. State*, 383 So. 2d 905,

906-07 (Fla. 1980)(failure to notify parents after child is taken into custody does not prohibit interrogation or render confession inadmissible per se). Thus, assuming as Grogg alleges that Florida statutes were violated, their violation does not render his confession inadmissible. As we have previously held in this opinion, under the totality of the circumstances, Grogg's waiver of his fifth amendment rights was voluntary, knowing and intelligent, and therefore his confession was properly admitted against him.

 Grogg also argues that pursuant to Code §§ 16.1-250 and 16.1-266, "Virginia law . . . imposes protective guidelines concerning waiver of counsel by indigent juveniles by requiring that some consent or waiver must be in writing by the child and the parent, guardian, or legal custodian or other person standing *in loco parentis* and determination of such an executed waiver is in the best interest of the child." We reject Grogg's argument because we do not believe that Code §§ 16.1-250 and 16.1-266 are applicable to the facts in this case. Code § 16.1-250 establishes detention hearing procedures, and Grogg does not contend that these procedures were not followed upon his return to Virginia. Code § 16.1-266, entitled "Appointment of Counsel," provides that a child and his parent, guardian, legal custodian, or other person standing *in loco parentis* shall be informed of the child's right to counsel. Code § 16.1-266(B)(3) provides that the child and his parent or legal guardian shall be given an opportunity to waive the right to representation by an attorney if the court finds the child and the parent or other guardian consents in writing. This Code section applies to waiver of counsel at a detention hearing, and the waiver of counsel contemplated under the statute applies to ensuing court proceedings and prosecution without assistance of counsel. The statute is a prophylactic device designed to ensure that before a child and his parent or legal guardian waives assistance of counsel, the child understands the consequences of waiver and waiver is in the best interest of the child. Because Code § 16.1-266 is inapplicable in this case, we do not address nor do we decide, whether a violation of the statute would render inadmissible a confession given by a juvenile. *See Tharp v. Commonwealth*, 221 Va. 487, 270 S.E.2d 752 (1980).

In summary, we hold that Grogg's sixth amendment right to counsel had not yet attached when the Virginia police officers conducted the interrogation and took his confession; that under the totality of the circumstances, Grogg's waiver of his fifth amend-

ment right against self-incrimination was voluntary, knowing, intelligent; and that any purported violation of the cited statutes did not render his confession inadmissible.

*Affirmed.*

Baker, J., and Hodges, J., concurred.