## Richmond

ANTHONY LAMONT RUSSELL

v.

COMMONWEALTH OF VIRGINIA

No. 0542-92-2

Decided June 29, 1993

COUNSEL

Mark W. Rossi (J. Bradley Davis, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Anthony Lamont Russell, appellant, appeals from his conviction for second degree murder. Appellant was seventeen years old at the time of the offense on April 25, 1991. At his transfer hearing on June 26, 1991, appellant was found by the juvenile court to be mentally retarded, thereby precluding him from being tried as an adult under Code § 16.1-269(A). The Commonwealth's Attorney sought removal to the circuit court, which entered an order authorizing him to seek an indictment in the case. Although the circuit court made no findings of fact, the effect of its order was to rule that appellant would be tried as an adult. Appellant contends (1) that the circuit court erred

in directing the Commonwealth's Attorney to seek a criminal indictment against him without making an express finding that he was not mentally retarded, and (2) that the evidence introduced in juvenile court was insufficient to allow the circuit court to find that he was not mentally retarded. For the reasons set forth below, we vacate appellant's conviction and remand the case for further proceedings consistent with this opinion.

## I.

Appellant, a juvenile at the time of the offense, was arrested and charged with first degree murder. At his transfer hearing in Richmond Juvenile Court on June 26, 1991, appellant contested the transfer on the ground that he was mentally retarded. He presented testimony from psychologist Caroline Campbell, who concluded that, although he was educably mentally retarded, he might have some borderline functioning. She reported that appellant had a full-scale I.Q. of 70, verbal I.Q. of 67, and performance I.Q. of 74. Overall, she testified that appellant functioned on a first grade level. Appellant had previously been sent to the Oakridge Learning Center, an institution for aggressive youth with lower I.Q.s, but he did not remain there long; the treatment team felt that Oakridge was an "inappropriate placement" for him because his "test scores are too high." Throughout his years of schooling, appellant was classified as educably mentally retarded. The Commonwealth presented no evidence. The juvenile judge found that appellant "is mentally retarded [under both the statutory and mental health definitions] and as such, this matter cannot be transferred to the Circuit Court."[1]

The Commonwealth's Attorney subsequently moved the circuit court to exercise its jurisdiction to try appellant as an adult pursuant to Code § 16.1-269(E). By order dated July 16, 1991, the circuit court ordered the Commonwealth's Attorney to seek a criminal indictment in the case. The parties agree that the circuit court held no hearing and made no findings of fact prior to issuing that order. Any hearing held

---

[1] Code § 37.1-1 defines mental retardation as "substantial subaverage general intellectual functioning which originates during the development period and is associated with impairment in adaptive behavior." The leading psychiatric treatise on the subject, *The Diagnostic and Statistical Manual of Mental Disorders* (DSM-III-R), defines mental retardation as (1) significantly subaverage general intellectual functioning and an I.Q. of 70 or below on an individually administered I.Q. test; (2) concurrent deficits or impairments in adaptive behavior; and (3) onset before the age of 18.

was after the fact and conducted solely for the purpose of "making a record" for appeal.

Appellant was subsequently tried as an adult, convicted of second degree murder, and sentenced to twenty years in prison, with five years suspended. At his sentencing, appellant again presented evidence in an attempt to show that he was mentally retarded and should be sentenced as a juvenile. The court declined to so hold.

## II.

We consider first whether the circuit court erred in ordering the Commonwealth's Attorney to seek a criminal indictment without first making the findings of fact set out in Code § 16.1-269(A). The Commonwealth argues that appellant is barred from raising this assignment of error on appeal because the record does not reveal whether he made a contemporaneous objection. We hold that the issue of preservation is inextricably linked with the argument on the merits. If the statute required the circuit court to make certain factual findings in order to exercise jurisdiction, failure to make those findings resulted in a lack of jurisdiction. *Bea v. Commonwealth*, 14 Va. App. 977, 980, 420 S.E.2d 255, 257 (1992) (holding that "clear language of [subsection (E)] specifying that the circuit court 'shall within twenty-one days after receipt of the case from the juvenile court . . . enter an order' constitutes a mandatory procedure that must be followed in order for the circuit court to acquire jurisdiction over a case originating in juvenile court"). Failure to make required findings creates a defect that is not waivable and may be raised by either party or the court at any time. *See, e.g., Owusu v. Commonwealth*, 11 Va. App. 671, 672, 401 S.E.2d 431, 431 (1991).

Code § 16.1-269 sets forth the procedure by which juvenile courts determine whether to try children between the ages of fifteen and seventeen as juveniles or adults. Under that Code section, the juvenile court may either "retain jurisdiction or transfer [the case] for proper criminal proceedings to the appropriate circuit court having criminal jurisdiction . . . ." If the juvenile court finds that the conditions in subsection (A) have been met, it may transfer the case, thereby relinquishing jurisdiction. That subsection expressly conditions such a transfer on four different factors, including a finding that

the "child is not mentally retarded."[2] Code § 16.1-269(A)(3)(c). Even if the juvenile court decides to retain jurisdiction, the Commonwealth's Attorney may "seek removal of the case to the proper circuit court." Code § 16.1-269(E). In determining whether removal is appropriate, the circuit court "shall . . . examine all such papers, reports and orders [of the juvenile court] to determine if there has been compliance with this section, *but without redetermining whether the juvenile court had sufficient evidence to find probable cause* [under subsection (A)(3)(a)], and enter an order either remanding the case to the juvenile court or advising the attorney for the Commonwealth that he may seek an indictment." *Id.* (emphasis added). By specifically stating that the court need not redetermine the probable cause issue, a requirement only under subsection (A)(3)(a), this section implies that a redetermination of the requirements under subsections (b), (c), and (d) is necessary.

Appellant cites two other cases that reinforce his contention that such findings are a jurisdictional prerequisite to trying appellant as an adult. In *Hairfield v. Commonwealth*, 7 Va. App. 649, 376 S.E.2d 796 (1989), this Court held that, if a juvenile court issues a transfer order but fails to find as a fact that the elements of Code § 16.1-269(A)(3) have been met, the circuit court has no jurisdiction to try the case. *Id.* at 652, 376 S.E.2d at 797 (citing *Matthews v. Commonwealth*, 216 Va. 358, 361, 218 S.E.2d 538, 541 (1975) (holding, under earlier version of statute, that circuit court is without jurisdiction to transfer if neither the juvenile nor circuit court has made the required findings)); *see also Bea*, 14 Va. App. at 979-80, 420 S.E.2d at 256-57. *Hairfield* also concluded that "the legislature intended that the circuit court which hears an appeal of a juvenile court's transfer decision *de novo* pursuant to Code § 16.1-136, must, in the absence of any provision specifying a different procedure, follow the mandatory provisions that govern the procedure of juvenile court transfer proceedings." *Id.* at 657, 376 S.E.2d at 800-01. *Hairfield* involved compliance with a different section of the statute, one requiring that, if either party so requests, the circuit judge who reviews the propriety of the transfer by the juvenile

---

[2] It also requires a finding that

[t]here is probable cause to believe that the child committed the delinquent act as alleged or a lesser included delinquent act which would be a felony if committed by an adult; . . . [t]he child is not . . . amenable to treatment or rehabilitation as a juvenile through available facilities . . . and . . . [t]he interests of the community require that the child be placed under legal restraint or discipline.

Code §§ 16.1-269(A)(3)(a), (b) and (d).

court may not also hear the case on the merits. Regardless of this distinction, however, the holdings in *Hairfield* and *Matthews* appear to require that the circuit court make specific findings of fact as to subsections (b), (c) and (d) of Code § 16.1-269(A) before allowing the transfer.

The Commonwealth attempts to distinguish *Hairfield* on the ground that it involved a transfer proceeding—in which the juvenile court transferred the case to circuit court—rather than a removal proceeding—in which the juvenile court retained jurisdiction but the Commonwealth's Attorney petitioned for removal to circuit court. Prior to the General Assembly's 1990 amendment of subsection (E), we made just such a distinction in *Grogg v. Commonwealth*, 6 Va. App. 598, 606, 371 S.E.2d 549, 552 (1988) (holding that circuit court must conduct *de novo* hearing, making findings of fact set forth in Code § 16.1-269(A), when considering appeal of child from decision of juvenile court to transfer case for trial as an adult). In that case, we noted that subsection (E) dealt only with removal proceedings and "[did] not address an appeal by the child from a decision to transfer jurisdiction to the circuit court." *Id.* at 606, 371 S.E.2d at 552. Since that time, however, the General Assembly has amended subsection (E) to eliminate the distinction between review of transfer and removal proceedings as set forth in *Grogg*. Act of Apr. 6, 1990, ch. 641, 1990 Va. Acts 937, 938. Subsection (E) now refers to *both* transfer *and* removal proceedings and provides the same procedures for review at the circuit court level "after receipt of either such notice." *Id.* The General Assembly also added other language directing the circuit court not to redetermine probable cause when conducting that review. *Id.* In expressly exempting the circuit court from redetermining probable cause during review of both transfer and removal proceedings, the legislature validated the conclusion implicit in *Hairfield* requiring the circuit court to redetermine all other issues, including making a finding that the "child is not mentally retarded," and extended that holding to removal proceedings.

■ While not directly raised, our decision requires that we address the nature of the hearing requirement in circuit court on the removal issue. Although the amendments to Code § 16.1-269 subsequent to our decision in *Grogg* make it clear that the circuit court is not required to conduct a *de novo* hearing in transfer or removal proceedings, certain minimum requirements must be met. There must be a hearing that gives meaningful review. The juvenile must be given notice of the

hearing and afforded an opportunity to appear with counsel and argue his position. Whether, in addition to "exam[ining] all . . . papers, reports and orders [of the juvenile court]," Code § 16.1-269(E), the circuit court hears additional evidence is a matter addressed to the sound discretion of the trial court and will not be disturbed by this Court unless there has been an abuse of discretion.

Because the circuit court failed to make the statutory findings in reviewing the removal proceeding at issue here, it lacked the jurisdiction necessary to try appellant as an adult. Accordingly, we vacate appellant's conviction and remand the case to the circuit court with directions to provide a hearing and enter the appropriate order within twenty-one days after certification of this Court's mandate. We do not reach appellant's second assignment of error.

*Vacated and remanded.*

Koontz, J., and Fitzpatrick, J., concurred.