COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Lemons and Senior Judge Baker
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.   Record No. 1244-99-1           JUDGE JOSEPH E. BAKER
                                        NOVEMBER 9, 1999
MELVIN MAURICE JOHNSON


         FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Jerome James, Judge

         Donald E. Jeffrey, III, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellant.

         Michelle J. Harris (Abrons, Fasanaro &
         Sceviour, on brief), for appellee.


     In this appeal by the Commonwealth, the sole question is

whether the Circuit Court of the City of Norfolk (trial court)

erroneously suppressed Melvin Maurice Johnson's (Johnson)

inculpatory confession to robbery and related charges.  For the

reasons that follow, we hold that Johnson knowingly and

intelligently waived his Miranda rights and that his confession

was voluntary.  Accordingly, we reverse the trial court.

                              I.

     On an appeal from a trial court's decision to suppress a

defendant's confession, "[w]e are bound by the trial court's

---

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

findings of historical fact unless plainly wrong or without evidence to support them."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  But "[w]e review de novo questions of law and the trial court's application of defined legal standards to the particular facts of a case."  Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998).

"In considering the standard of review in this case, we are confronted with two separate questions:  (1) the standard of review of a trial court's finding of the voluntariness of a confession; and (2) the standard of review concerning the finding of the validity of a waiver of Miranda rights."  Goodwin v. Commonwealth, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986).  Whether a statement provided by a defendant to police is voluntary is a legal rather than a factual question, subject to independent review by this Court.  See Bottenfield v. Commonwealth, 25 Va. App. 316, 324, 487 S.E.2d 883, 887 (1997).  "[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness."  Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

-

II.

Viewed in the light most favorable to Johnson, the prevailing party below, the evidence proved that on January 28, 1999, Detective Crawford's investigation of a January 4, 1999 home-invasion robbery led him to Johnson's residence. After talking to Johnson's cousin, Crawford had reason to believe that Johnson, who was then seventeen years old, had been involved in the robbery. Upon his return home from school that afternoon, Johnson spoke briefly with Crawford and agreed to accompany Crawford to the police operations center (POC) for questioning.

Johnson resided with his grandmother, Gladys Lindsey, who was also his legal guardian. After talking to Johnson, Crawford spoke briefly with Lindsey and told her he wanted to question Johnson at the POC. He asked Lindsey to come to the POC so she could witness Johnson's signature on the <u>Miranda</u> waiver form. Initially, Crawford did not tell Lindsey that Johnson was a suspect in the robbery investigation.

At the POC, Crawford obtained Lindsey's signature on a <u>Miranda</u> waiver form, which Johnson also read and signed. At the suppression hearing, Lindsey testified that the form was blank when she signed it. Johnson initially testified that Crawford escorted Lindsey out of the interview room after he, Johnson, signed the form, but Johnson later testified that Lindsey was not present when he signed the form. Crawford testified that Lindsey signed the rights form in Johnson's presence, after

-

Johnson executed the form.  Johnson admitted reading and signing the Miranda waiver, and Crawford testified that Johnson indicated he understood his Miranda rights.

After Lindsey signed the waiver form, Crawford escorted her from the interview room because his "personal policy" showed that usually "if you are talking to someone, they are less inclined to speak if their parents are in there."  Crawford told Lindsey that he was not interested in Johnson as a suspect, but that he was after the more culpable participants in the robbery.  He also told Lindsey that Johnson would be released to go home in approximately two hours.

Johnson arrived at the POC at 1:45 p.m., and Crawford began interrogating Johnson at 2:15 p.m.  Johnson initially denied any involvement in the robbery.  Crawford indicated that he did not believe Johnson and explained to Johnson the seriousness of the offense.  The initial interview concluded at 2:55 p.m., after Johnson asked for some time to "think about it for a while."  Crawford resumed the interrogation with Johnson at 4:35 p.m.  At 6:00 p.m., Crawford and Johnson visited the crime scene, returning to the POC at 6:25 p.m.  At 8:50 p.m., Crawford resumed the interrogation, and Johnson subsequently admitted his involvement in the robbery.  The interrogation concluded at 9:18 p.m., after Johnson signed a written statement prepared by Crawford.

-

While Johnson was at the POC, Crawford allowed Johnson to take bathroom breaks, and he offered Johnson food and drink on several occasions.

Johnson claimed he confessed only after becoming frustrated and because he wanted to go home. He also testified that he had smoked a marijuana "blunt" about twenty minutes before he initially met Crawford and that he was still "high" when he signed the confession. Johnson admitted that he never told Crawford he was under the influence of marijuana, and Crawford testified that Johnson did not appear to be intoxicated or otherwise "under the influence."

While Crawford was interrogating Johnson, Johnson's father and uncle both came to the POC and attempted to see Johnson. Police denied both men access to Johnson.

Johnson moved to suppress his confession on the ground that it was obtained in violation of the Fifth and Sixth Amendments to the Constitution of the United States and Code § 16.1-247. The trial court found that Johnson was not deprived of any physical comforts; that he was doing well in the 11th grade of school and appeared to be intelligent; that he had not had "appreciable" contact with the police nor had he previously experienced "police interrogation"; that he had smoked a marijuana "blunt" sometime on the day of his arrest; that he continued to be questioned after denying any involvement in the robbery; that he was deprived of the presence of his guardian who had been

-

removed from the interview room after being used to witness Johnson's signing of the rights waiver; and that Crawford's tactic of not permitting Lindsey to be present as Johnson was being questioned violated the very purpose of a guardianship. Based on these findings, the trial court suppressed Johnson's confession.

III.

Where a defendant moves to suppress a confession pursuant to Miranda,

> [t]he prosecution bears the burden of proving that the defendant knowingly and intelligently waived the constitutional privilege against self-incrimination and the right to counsel. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Although the defendant may waive these rights, it must be shown that "the waiver is made voluntarily, knowingly and intelligently."

Goodwin, 3 Va. App. at 252, 349 S.E.2d at 163 (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

Whether a defendant has validly waived his Miranda rights is determined by looking at the totality of the circumstances. See Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d 352, 357 (1987). This totality-of-the-circumstances test is equally applicable when a juvenile is involved. See Fare v. Michael C., 442 U.S. 707, 725 (1979).

-

> The totality approach permits--indeed, it mandates--inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

Id.

One unique factor that is considered when a juvenile decides to waive his Fifth Amendment rights is the presence or absence of a parent or legal guardian. "[I]t is desirable to have a parent, counsel or some other interested adult or guardian present when . . . a juvenile waives fundamental constitutional rights and confesses to a serious crime. However, it is well established that the mere absence of a parent or counsel does not render the waiver invalid." Grogg v. Commonwealth, 6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1991).

Once the Commonwealth has established a valid waiver, it must also establish that the defendant's confession was voluntary. On appeal, in deciding whether the Commonwealth has met this burden,

> [w]e must determine whether, in light of the totality of the circumstances, including not only the details of the interrogation, but also the characteristics of the accused, the statement was the product of an essentially free and unconstrained choice by its maker, or whether the maker's will was overcome and his capacity for self-determination critically impaired.

-

Goodwin, 3 Va. App. at 253, 349 S.E.2d at 163-64.  See Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973).

As in determining whether there has been a valid waiver, in determining whether a juvenile confessed voluntarily, we look to the totality of the circumstances.  See Novak v. Commonwealth, 20 Va. App. 373, 386-87, 457 S.E.2d 402, 408 (1995).  The mere absence of a parent or legal guardian when a juvenile is interrogated does not render the juvenile's confession involuntary.  See Jackson v. Commonwealth, 255 Va. 625, 637-38, 499 S.E.2d 538, 546 (1998), cert. denied, 119 S. Ct. 796 (1999); Wright v. Commonwealth, 245 Va. 177, 185-86, 427 S.E.2d 379, 385-86 (1993), judgment vacated on other grounds, 512 U.S. 1217 (1994); Grogg, 6 Va. App. at 613, 371 S.E.2d at 557.

Denying family members access to a juvenile defendant is generally immaterial to the issue of the voluntariness of his waiver.  See Jackson, 255 Va. at 638, 499 S.E.2d at 546 (holding that a juvenile defendant's confession was not involuntary merely because, unbeknownst to the defendant, his mother was initially denied access to him).  "Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right."  Moran v. Burbine, 475 U.S. 412, 422 (1986).  The rights guaranteed under the Fifth Amendment are personal to the defendant, and our focus, therefore, must be on the defendant's wishes and his state of

-

mind.  See Lamb v. Commonwealth, 217 Va. 307, 310, 227 S.E.2d 737, 740 (1976) (holding that an attorney could not invoke the right to counsel that the defendant validly waived).

IV.

Johnson does not deny that Miranda warnings were given or that he signed a waiver that his legal guardian also signed. The trial court found that Johnson was doing well in the 11th grade of high school and was intelligent.  In addition, it found that Johnson was not denied creature comforts while being interviewed.  Johnson never asked for the presence of his grandmother, another adult, or an attorney while he was being interrogated.  He was unaware of his father's and uncle's attempts to see him.  There was no evidence that Crawford threatened Johnson, or otherwise coerced him into confessing. Finally, the fact that Crawford may have misled Lindsey, while disconcerting, was immaterial to the voluntariness of Johnson's confession.

The evidence in this case was insufficient to support any conclusion other than that Johnson knowingly and intelligently waived his Miranda rights.[1]  Moreover, based upon our independent examination of the record in this case, we conclude that Johnson's will was not overcome, that his capacity for

---

[1] Although the trial court noted Johnson's testimony that he had smoked marijuana prior to meeting with Crawford, the court did not make a specific finding that Johnson's Miranda waiver was invalid because of the marijuana use.

-

self-determination was not critically impaired, and that his confession was the product of a free and unconstrained choice.[2] Accordingly, we reverse the decision of the trial court and remand this case to the circuit court for such further action as the Commonwealth may be advised.

Reversed and remanded.

---

[2] Johnson's assertions that his statement should be suppressed under the Sixth Amendment and pursuant to Code § 16.1-247 are without merit.  At the time he was interrogated, Johnson had not been charged, so his Sixth Amendment right to counsel had not yet attached.  See Grogg, 6 Va. App. at 609, 371 S.E.2d at 554 (the right to counsel under the Sixth and Fourteenth Amendments attaches "once charges are brought, by way of formal charge, preliminary hearing, indictment, information, or arraignment").  We have previously held that Code § 16.1-247 "governs the placement of juveniles in detention facilities" and was "not intended to safeguard a juvenile's Fifth and Sixth Amendment rights."  Roberts v. Commonwealth, 18 Va. App. 554, 559, 445 S.E.2d 709, 712 (1994).