## Norfolk

MANUEL H. VENABLE

v.

COMMONWEALTH OF VIRGINIA

No. 0744-90-1

Decided April 23, 1991

COUNSEL

Paul H. Wilson, for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—Manuel H. Venable was convicted of first degree murder in the death of his brother. The dispositive issue of this appeal is whether his confession should have been suppressed because his physical and mental state were such at the time he made the statement that his ability to exercise his free will in making an intelligent waiver and voluntary statement was critically impaired.

▮ Voluntariness is determined "in light of the totality of the circumstances, including not only the details of the interrogation, but also the characteristics of the accused, [whether] the statement was a product of an essentially free and unconstrained choice by its maker, or whether its maker's will was overcome and his capacity for self-determination critically impaired." *Goodwin v. Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163-64 (1986). In *Williams v. Commonwealth*, 234 Va. 168, 360 S.E.2d 361 (1987), *cert. denied*, 484 U.S. 1020 (1988), the Virginia Supreme Court made its most recent interpretation of the standard by which we review questions of voluntariness.

> The burden is upon the Commonwealth to prove, by a preponderance of the evidence, that Williams' statement was voluntary. *See Rodgers v. Commonwealth*, 227 Va. 605, 608, 318 S.E.2d 298, 300 (1984); *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381, *cert. denied*, 469 U.S. 873 (1984); *Griggs v. Commonwealth*, 220 Va. 46, 49, 255 S.E.2d 475, 477 (1979); *McCoy v. Commonwealth*, 206 Va. 470, 474, 144 S.E.2d 303, 307 (1965). Whether a statement is voluntary is ultimately a legal rather than a factual question, but subsidiary factual questions are entitled to a presumption of correctness. *See Miller v. Fenton*, 474 U.S. 104, 110-12 (1985); *Gray v. Commonwealth*, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987). Moreover, *Rodgers* points out that following a trial court's finding of voluntariness, the

scope of our appellate review is limited to determining whether the evidence supports the finding. The trial court's finding on this issue is entitled to the "same weight as a fact found by a jury, and that finding will not be disturbed on appeal unless plainly wrong." *Rodgers*, 227 Va. at 608-09, 318 S.E.2d at 300.

*Id.*, at 172, 360 S.E.2d at 364.

Thus, the findings by the trial judge, unless plainly wrong or without evidence to support them, will not be overturned on appeal.

On September 3, 1989, at approximately 4:47 a.m., Officer Brown went to a local convenience store and found the appellant bleeding from his chin. A medical crew arrived but the appellant, believing his injury to be minor, sent them away.

At approximately 5:25 a.m., Officer Brown responded to a dispatch sending him to 447 Rickneck Road, home of the appellant, a few blocks from the convenience store. At 5:31 a.m., Officer Brown found appellant next door at 451 Rickneck Road slumped over in a pool of blood. Medics reached the scene and transported the appellant to the hospital. En route to the hospital, the medics administered intravenous fluid to him. Appellant arrived at the hospital at approximately 6:10 a.m.

Upon arrival at the hospital, the appellant was found to be suffering from a slight cut on the chin, a very deep wound to the mid-forearm with a tendon exposed and a right mid-lower leg laceration. It was estimated that the appellant had lost 1,500 c.c.'s of blood, approximately one-third of the body's total blood volume. The treating physician detected the odor of alcohol on the appellant and his blood analysis indicated a .147 percent blood alcohol content and the presence of cocaine in his system. The appellant was covered in excrement "basically from his shoulders to his toes." The treating physician, Dr. Howard, felt it was evident that the appellant was under the influence of drugs. However, the doctor stated he had no trouble communicating with the appellant and received a brief history as to appellant's injuries.

The doctor described the appellant as being in "mild shock." After being administered a second IV, the patient was brought

back into the normal range within five minutes. Between 6:45 and 7:00 a.m., after the patient had returned to normal and was out of shock, the police arrived. Sergeant Schockley and Detective Bennett requested the permission of Dr. Howard to question the appellant. Dr. Howard indicated that he had no reservations about giving this permission. Sergeant Schockley described the appellant as nervous and stated he detected the odor of alcohol but felt that the appellant was not drunk. The appellant was read his *Miranda* rights and indicated that he was willing to talk.

Officers Schockley and Bennett questioned the appellant for as long as forty-five minutes and found him to be cooperative and coherent. He was able to explain the events of the day in chronological order. The appellant stated that he had had nothing to drink since 2:00 a.m. in the morning of September 3 and that prior to that time he had consumed between four and five beers. The appellant recalled his first contact with Officer Brown at the convenience store near his home. The appellant stated that the cut on his chin was received during a fight in which his brother Leon (the victim) hit him in the chin with a cane. The appellant then stated he returned to his home after seeing Officer Brown.

According to the appellant, shortly after returning home he and his brother Leon became embroiled in a heated argument. They began to fight and the appellant took a knife from a table near his kitchen. While wrestling on the floor, the appellant stated that he stabbed Leon two or three times until he let go and then stabbed him an additional three times.

At the time of his statement, the appellant's wounds had not yet been sutured; however, when they were sutured he was given only a local anesthetic.

The appellant argues that under the totality of the circumstances his statements cannot be considered the product of a rational and free will. The appellant asserts at the time of interrogation he was under the influence of alcohol and cocaine, had lost approximately one-third of his blood volume, was afflicted with unsutured wounds, and suffering mental anguish over the loss of his brother.

The trial court stated that "neither the physical condition nor the alcohol or the drugs affected the defendant to the extent that

he would not be capable of giving the statement in question." This finding is supported by the evidence and may not be overturned on appeal. *Williams*, 234 Va. at 172, 360 S.E.2d at 364. The treating physician willingly allowed the police officers to talk to the appellant. The appellant gave a detailed and chronological description of the events of the evening and possessed vivid recollection. The appellant was advised of his rights, indicated that he understood them and willingly spoke to the officers.

■ Furthermore, any undue pressures upon the defendant did not emanate from police officials. In *Kauffmann v. Commonwealth*, 8 Va. App. 400, 382 S.E.2d 279 (1989), the defendant made inculpatory statements shortly after his daughter's suicide. The defendant alleged that his statements were involuntary as he "was under severe psychological strain." We held that the fifth amendment was not implicated where there was no official coercion. 8 Va. App. 400, 405-06, 382 S.E.2d 279, 282 (1989). "Absent police conduct *causally related* to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. [sic]" *Williams v. Commonwealth*, 4 Va. App. 53, 73, 354 S.E.2d 79, 90 (1987) (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)).

Upon independent review of the record and considering the totality of the circumstances and the trial judge's finding of voluntariness, we hold the evidence supports the trial judge's finding that the appellant's ability to exercise his free will was not critically impaired and we also hold that the confession was freely and voluntarily given.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Baker, J., and Willis, J., concurred.