Alexandria
LAMONT O. DOUGLAS
v.
COMMONWEALTH OF VIRGINIA
No. 2276-92-4
LAMONT O. DOUGLAS
v.
COMMONWEALTH OF VIRGINIA
No. 2277-92-4
Decided December 6, 1994

COUNSEL

Barbara Sue Carter, for appellant.

Eugene Murphy, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Lamont O. Douglas (appellant), a juvenile, was convicted in a bench trial by the Circuit Court of Fairfax County (trial court) of malicious wounding, use of a sawed-off shotgun, and use of a firearm in the commission of a felony. In a second bench trial, in the same jurisdiction, appellant was convicted of robbery and use of a sawed-off shotgun.[1]

Appellant, although sixteen years old at the time of the offenses, was tried as an adult. Appellant asserts that the trial court failed to conduct a review to which he, a juvenile, is entitled as a matter of law. He also contends that the trial court erred (1) in holding that it had jurisdiction to try him, a juvenile; (2) in denying his motion to suppress his statements to Officer John Stone; (3) in denying his motion to suppress the evidence found in a search of his aunt's house; (4) in denying him due process of law by refusing to allow an additional mental health examination; and (5) in refusing to grant a new trial with respect to the robbery and shotgun charges of August 18, 1992. The issue concerning the transfer is dispositive of this appeal. We hold that the trial court

---

[1] The two appeals have been consolidated. Record Nos. 2277-92-4 and 2276-92-4.

was not empowered to try appellant because the record fails to show that it held the proper hearing or conducted a meaningful review as required by law to transfer a juvenile from the juvenile court to the circuit court for trial as an adult. For the reasons that follow, we reverse and remand. We will also address those remaining issues that are likely to arise in the event of a retrial of these proceedings.

## Procedural History

Appellant was taken into custody on January 31, 1992 by the Fairfax County Police Department for unlawfully and feloniously robbing Augustin Garcia with a sawed-off shotgun on January 24, 1992 (Garcia crimes) and unlawfully, feloniously, and maliciously shooting Kenneth Mandeville with a sawed-off shotgun, with the intent to maim, disfigure, disable, or kill, on January 27, 1992 (Mandeville crimes). On February 13, 1992, the Commonwealth's attorney gave notice of the Commonwealth's intent to seek transfer of appellant to the circuit court for trial as an adult for the Mandeville crimes. After a hearing held on March 5, 1992, the Juvenile and Domestic Relations District Court of Fairfax County[2] (juvenile court) found probable cause to believe appellant committed the Mandeville crimes as charged and ordered a transfer investigation and report.

On March 19, 1992, the Commonwealth's attorney gave notice of the Commonwealth's intent to seek transfer of appellant to the circuit court for trial as an adult for the Garcia crimes. After a hearing held on March 29, 1992, the juvenile court found probable cause to believe appellant committed the Garcia crimes as charged and ordered a consolidated transfer investigation and report.

After a hearing held on May 11, 1992, the juvenile court ordered that appellant be transferred to the circuit court for trial

---

[2] At the time of these procedures, some of the hearings were held in that part of the juvenile and domestic relations district court that had been designated as the Family Court of Fairfax County on an experimental basis. Hereinafter, we will refer to those proceedings as having been held in the juvenile court. The Circuit Court of Fairfax County will be referred to as the trial court.

as an adult on all charges.[3] Appellant noted his appeal,[4] and May 28, 1992 was set by counsel for argument in the trial court on the appeal of the transfer hearing.

Approximately three days after the May 11, 1992 hearing, and before the transcript of the juvenile court's transfer hearing arrived in the trial court, appellant's counsel received a telephone call from the circuit court clerk informing her that, upon the trial court's review of the file, the appeal had been denied and the Commonwealth's attorney had been notified to seek an indictment in the trial court. On May 18, 1992, a grand jury returned true bills on all charges in both indictments against appellant.

On June 19, 1992, five pretrial motions were argued in the trial court and denied. In response to appellant's argument that the trial court was required to have conducted something more than "simply a reading of the file" before denying the appeal of appellant's transfer to the trial court, the judge who heard the motion stated:

> I deny your motion, . . . I am of the opinion that the Code does not require a hearing. It's been the practice in this Court since that Code section came into being that we do not have hearings on that issue.

> I further find that Judge Middleton [the circuit court judge] did comply with the Code provision governing what a Circuit Court Judge must do, and that he made an appropriate determination that the Juvenile Court followed the procedures set forth in the statutory scheme. . . .

In a bench trial held on August 12, 1992, appellant was found guilty of the Mandeville crimes as charged in counts two, three, and four of the indictment. In a separate bench trial held on August 18, 1992, appellant was found guilty of the Garcia crimes as charged in counts one and two of the indictment. Appellant was

---

[3] "All charges" refers to all of the charges from both the Mandeville and the Garcia crimes.

[4] Based upon our review of the record, we find that the Commonwealth was sufficiently notified by appellant of the appeal of the juvenile court's transfer to the circuit court. Accordingly, we hold that the appeal was duly perfected.

sentenced at a consolidated sentencing hearing on October 20, 1992.

## I.  The Transfer

Code § 16.1-269(E) provides:

The circuit court shall, within twenty-one days after receipt of the case from the juvenile court, and *after examination of all such papers, reports and orders,* enter an order either remanding the case to juvenile court or advising the Commonwealth's attorney that he may seek an indictment.

(Emphasis added).[5] The record before us shows that a transcript of the transfer proceedings held in the juvenile court was not filed with the trial court until May 29, 1992, approximately two weeks after the trial court ruled that appellant should be tried as an adult. Thus, the record fails to show that the transcript was considered by the trial court at the time of its decision concerning appellant's appeal of the transfer order from the juvenile court.

■ We hold that the transcript from the juvenile court transfer proceedings is a document included within the meaning of "papers, reports and orders," found in Code § 16.1-269. *See Grogg v. Commonwealth,* 6 Va. App. 598, 607, 371 S.E.2d 549, 553 (1988). " '[T]he statutes relating to the procedure applicable to proceedings for cases tried in juvenile court are mandatory and must be followed.' " *Hairfield v. Commonwealth,* 7 Va. App. 649, 656-57, 376 S.E.2d 796, 800 (1989) (quoting *Evans v. Cox,* 327 F. Supp. 1057, 1058 (E.D. Va. 1971)). We further find that the procedure required by Code § 16.1-269 was not followed. In this case a transcript was available, and pursuant to the provisions of Code § 16.1-269, in effect when the offenses occurred, the trial court should have either held an evidentiary hearing or reviewed that transcript along with any other relevant "papers, reports and orders." Without conducting a proper review, under these facts, the trial court erred in denying the appeal before reviewing the transcript and any other relevant information that was available.

■ Moreover, the prosecution saw the need for a full review when it set the May 28, 1992 hearing date for the appeal of the transfer hearing in the trial court. Without the transcript, the de-

---

[5]  Code § 16.1-269 has been amended since appellant's 1992 convictions.

cision of the trial court, just three days after the juvenile court transfer hearing, failed to allow for such relevant information as may have been presented at a hearing.

> Code § 16.1-296 provides in pertinent part: "From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken in accordance with the provisions of Chapter 7 (§ 16.1-123.1 et seq.) of Title 16.1." Code § 16.1-136 provides in pertinent part: "Any appeal taken under the provisions of this Chapter [Chapter 7] shall be heard de novo in the appellate court . . . ."

*Grogg*, 6 Va. App. at 606, 371 S.E.2d at 552. As we said in *Grogg*, "[t]he critical requirement is that the circuit court make an independent determination on the issue of transfer." *Id.* at 607, 371 S.E.2d at 553. The transcripts were part of the circuit court's file under review in *Grogg*. Accordingly, the trial court in appellant's case should have reviewed the transcript as part of the "papers, reports and orders" in order to ensure an independent determination.

As has been noted by the United States Supreme Court, it is inconceivable that a juvenile has the right to appeal his juvenile court transfer proceedings to the circuit court and not be afforded the opportunity for a hearing or a meaningful review in that court. *See Kent v. United States*, 383 U.S. 541, 554 (1966).

## II. Suppression of Statement to Officer Stone

The record clearly discloses that appellant voluntarily, without any pressure, and after having been advised of his right to counsel, made the statements that he seeks to suppress. The trial court did not err when it denied the motion to suppress appellant's inculpatory statements to Officer Stone. *See Fare v. Michael C.*, 442 U.S. 707, 725, *reh'g denied*, 444 U.S. 887 (1979); *Venable v. Commonwealth*, 12 Va. App. 358, 359, 404 S.E.2d 74, 75 (1991); *Shell v. Commonwealth*, 11 Va. App. 247, 252, 397 S.E.2d 673, 676 (1990); *Goodwin v. Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163-64 (1986).

## III.  Suppression of Evidence

The record further shows that the police, without coercion, were given permission to search the residence by a person empowered to give that permission. The trial court did not err when it denied the motion to suppress the incriminating evidence found during the search of the residence. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Richards v. Commonwealth*, 8 Va. App. 612, 615-16, 383 S.E.2d 268, 270 (1989); *Bosworth v. Commonwealth*, 7 Va. App. 567, 571-72, 375 S.E.2d 756, 758-59 (1989).

## IV.  Mental Health Examination

At the sentencing hearing, appellant moved that he be transported from Fairfax County to Maryland for an additional mental health examination prior to imposition of the sentence. The juvenile court, as a part of the transfer hearing, had ordered a transfer study and psychological report. The study and report informed the court that appellant has no psychiatric disorder, "is not mentally retarded, and there is no evidence which would provide the basis for a legal finding of criminal insanity."

Prior to trial, appellant was examined by Dr. Arthur Centor, a clinical psychologist. Dr. Centor found appellant to be competent to stand trial because he understood the nature of the proceedings against him and was able to assist in his own defense. He also found appellant to have been sane at the time of the offenses.

At the sentencing hearing, Dr. Charles Ullmann, a clinical psychologist employed by appellant, did not contradict Dr. Centor's findings. However, he recommended that appellant be further examined by Dr. Allan F. Mirsky, a Maryland doctor more experienced than Dr. Ullmann in neurological effects upon criminal behavior. Dr. Ullmann did not testify that the results of such an examination would produce findings favorable to appellant.

Appellant relies on *Ake v. Oklahoma*, 470 U.S. 68 (1985), to support his motion made at the sentencing hearing.

*Ake* makes clear, however, that an indigent defendant does not have a "constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own."

*Tuggle v. Commonwealth*, 230 Va. 99, 107, 334 S.E.2d 838, 843 (1985), *cert. denied*, 478 U.S. 1010 (1986) (quoting *Ake*, 470 U.S. at 84).

■ Appellant had not only been examined by the Woodburn Center for Community Mental Health; the Juvenile Forensic Psychology Program (Woodburn Center), and a psychologist at the Commonwealth's expense, but also by a psychologist of his choice. Neither Dr. Centor nor anyone from the Woodburn Center expressed a need for further mental health examinations. Before an indigent defendant is entitled to psychiatric assistance, he must "demonstrate[] to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Ake*, 470 U.S. at 83. In *Tuggle*, our Supreme Court said that the defendant must make a "threshold showing to the trial court that his sanity [was] likely to be a significant factor in his defense." 230 Va. at 106, 334 S.E.2d at 843 (quoting *Ake*, 470 U.S. at 72). Appellant has failed to demonstrate by this record that had the trial court granted his motion for a further mental health examination, the result likely would have been a significant factor in the sentence he would have received. Moreover, appellant failed to present any authority for the trial court or this Court to enter an order that would effectively carry out appellant's request to be transported out of this state for such an examination.

## V. New Trial

In the case of *Douglas v. Commonwealth*, Record No. 2276-92-4 (Garcia crimes), appellant raises the further issue of a new trial based upon after-discovered evidence. We need not address that issue as we are reversing and remanding both cases.

## Conclusion

For the reasons stated, we reverse the judgments of the trial court. Because the trial court failed to conduct a hearing or a meaningful review of all the "papers, reports and orders," it cannot adjudicate these cases until that requirement is met. Accordingly, these cases are remanded to the trial court for such further proceedings as the Commonwealth may be so advised.

*Reversed and remanded.*

Benton, J., and Bray, J., concurred.