**Alexandria**

JEFFREY LAMONT ROBERTS

v.

COMMONWEALTH OF VIRGINIA

No. 2171-92-4

Decided June 28, 1994

COUNSEL

Timothy S. Coyne, Assistant Public Defender (John G. Cadden; Law Offices of William W. Sharp, on briefs), for appellant.

Kathleen Martin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Jeffrey Lamont Roberts appeals from his convictions for first degree murder and use of a firearm in the commission of a murder. He contends that the trial court erred in denying his motion to suppress his confession to police in violation of (1) his Fifth Amendment right against self-incrimination; (2) his Sixth Amendment right to counsel; and (3) Code § 16.1-247, which relates to detention of juveniles. For the reasons that follow, we affirm appellant's convictions.

On April 10, 1992, the seventeen-year-old appellant went voluntarily to the police station after hearing that the police wanted to question him about the death of Darryll "Starr" Dougans on April 7, 1992. Although appellant's twenty-six-year-old uncle,

Warren Jackson, had driven him to the police station, neither appellant nor Jackson requested that Jackson be present during questioning, and the officers never offered to let Jackson be present. Officers Williamson and Marchi told appellant of the pending charges and served him with the juvenile petitions for murder and attempted murder.[1] The officers did not advise him of the possible penalties he faced, but they did advise him of his *Miranda* rights, which he said he understood. In order to show appellant's familiarity with his Fifth and Sixth Amendment rights, the Commonwealth also introduced evidence that appellant had consulted with an attorney during two prior unrelated proceedings and that he had exercised his Fifth Amendment right to remain silent during one of them.

After appellant agreed to talk with the officers, they told him that they had witnesses to his involvement in the shooting, and appellant confessed. Officer Williamson reported that appellant said, "I shot Starr. It was a family thing. I snapped." After transcribing appellant's detailed statement, the officers read it back to him, and appellant made corrections and signed it. Appellant then asked to see his uncle and was allowed to visit with friends and relatives until the police located bed space for him in a juvenile facility. The officers testified that the interview was "cordial" and "low key," and that although appellant was nervous, he was alert and responsive. Appellant's uncle testified that appellant was "not himself" before arriving at the police station and was "terrified" after confessing.

Prior to trial, appellant moved to suppress his confession on the ground that it was obtained in violation of the Fifth and Sixth Amendments and the Virginia Code. After conducting a hearing, the trial court denied the motion. It found that appellant knowingly, intelligently, and voluntarily waived his Fifth Amendment right not to incriminate himself; that appellant's Sixth Amendment right to counsel had not yet attached, but that even if it had, appellant also knowingly, intelligently, and voluntarily waived it; and that there had been no violation of the Virginia Code, but that even if there had been, such a violation would not require suppression of the confession.

---

[1] The attempted murder charge was subsequently dismissed.

At trial, appellant renewed his objection to the admission of his confession and moved to set aside the verdict on the same grounds. Both motions were denied. The jury returned a verdict of guilty on the charges of first degree murder and use of a firearm in the commission of a murder, and appellant was sentenced to fifty-eight years in the penitentiary.

## I.

Appellant argues first that his confession was elicited in violation of his Fifth Amendment right against self-incrimination. Based on this Court's holding in *Grogg v. Commonwealth*, 6 Va. App. 598, 371 S.E.2d 549 (1988), we disagree.

In order for a confession given during a custodial interrogation to be admissible at trial, the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily elected to waive that right. *Id.* at 611, 371 S.E.2d at 556. In assessing voluntariness, the court must determine whether "the statement is the 'product of an essentially free and unconstrained choice by its maker,' or . . . whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.' " *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)), *cert. denied*, 469 U.S. 873 (1984). In determining whether the waiver was knowing and intelligent, the court must examine the totality of the circumstances. *Fare v. Michael C.*, 442 U.S. 707, 717 (1979). Where a juvenile is involved, "[t]his includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* at 725; *see also Green v. Commonwealth*, 223 Va. 706, 710, 292 S.E.2d 605, 607 (1982); *Harris v. Commonwealth*, 217 Va. 715, 719-20, 232 S.E.2d 751, 755 (1977); *Grogg*, 6 Va. App. at 612, 371 S.E.2d at 556. Although "it is desirable to have a parent, counsel or some other interested adult or guardian present when . . . a juvenile waives fundamental constitutional rights and confesses to a serious crime . . . [,] the mere absence of a parent or counsel does not render the waiver invalid." *Grogg*, 6 Va. App. at 613, 371 S.E.2d at 557. The absence of a parent or legal counsel is merely a factor to be considered, albeit a significant one. *Id.*

In this case, appellant came to the police station voluntarily after receiving information that the police wanted to question him about a murder. Appellant was seventeen-and-a-half years old at the time. Although appellant's twenty-six-year-old uncle drove him to the police station, later reporting that appellant was not himself during the trip, neither appellant nor his uncle requested that the uncle be present during the questioning. Appellant was neither frisked nor handcuffed. When the officers read appellant his *Miranda* rights and asked him if he understood them, he responded affirmatively to each of their statements. When he merely moved his head in response to one of the questions, the officers asked him to provide a verbal response. The fact that he was advised of his rights only once before making the statement is not dispositive of this issue. In addition, the Commonwealth introduced evidence showing that appellant was familiar with his rights under the Fifth Amendment: he had counsel during two prior judicial proceedings and exercised his Fifth Amendment right to remain silent during one of them. The officers testified that the interview, which lasted less than an hour-and-a-half, was "cordial" and "low key" and involved no coercion. They also testified that appellant was alert and responsive throughout the interview and did not appear to be under the influence of alcohol or drugs. Finally, appellant was informed that he stood charged with murder and attempted murder, and his waiver was not invalid simply because he had not been informed of the range of punishment for these offenses. Appellant chose to take the stand but gave no testimony to contradict that offered by the Commonwealth. Although no parent or other adult was present in this case, we nevertheless conclude, under a totality of the circumstances, that appellant voluntarily, knowingly, and intelligently waived his Fifth Amendment right against self-incrimination.

## II.

Appellant argues next that the admission of his confession violated his Sixth Amendment right to counsel because the right had attached and had not been validly waived. Assuming without deciding that appellant's right to counsel had attached, we nevertheless conclude that the trial court did not err in finding that appellant waived his Sixth Amendment right to counsel. Although there is a presumption against waiver, the waiver of any constitutional right is valid as long as the Commonwealth meets its bur-

den of showing that waiver was voluntary, knowing, and intelligent. *Peterson v. Commonwealth*, 5 Va. App. 389, 396, 363 S.E.2d 440, 444 (1987); *see Bolden v. Commonwealth*, 11 Va. App. 187, 190-91, 397 S.E.2d 534, 536 (1990), *cert. denied*, 502 U.S. 943 (1991). For the reasons discussed above, we hold that appellant waived his Sixth Amendment right in the same fashion he waived his Fifth Amendment right. *See Patterson v. Illinois*, 487 U.S. 285, 296-97 (1988).

## III.

█ Appellant also contends that his confession was improperly admitted because the officers failed to comply with the requirements of Code § 16.1-247. As found by the trial judge, this code section governs the placement of juveniles in detention facilities, and we hold that it is not intended to safeguard a juvenile's Fifth and Sixth Amendment rights. Assuming without deciding that the officers failed to comply with the requirements of Code § 16.1-247, "non-compliance alone does not prove that the Commonwealth has failed to meet its burden of proving that the defendant waived his right to counsel" or his right against self-incrimination. *Bolden*, 11 Va. App. at 193, 397 S.E.2d at 537-38 (decided under Code §§ 19.2-157, -159, and -160, which outline circumstances under which court must inform accused of his right to counsel); *see also Van Sant v. Commonwealth*, 224 Va. 269, 274, 295 S.E.2d 883, 886 (1982).

This is precisely the result reached by the Virginia Supreme court in *Durrette v. Commonwealth*, 201 Va. 735, 113 S.E.2d 842 (1960), decided under an earlier version of Title 16, Article 4, which also dealt with the arrest and detention of juveniles. Former Code § 16.1-197 provided that if a juvenile was placed in detention or jail, "[i]mmediately, or as soon thereafter as reasonably practicable, the custodial officer . . . shall notify the judge of the juvenile court, its clerk or probation officer, and request the issuance of proper process and order of commitment . . . [and] notify a parent or [custodian]." *Id.* at 739-40, 113 S.E.2d at 846; *see* Act of March 29, 1958, 1958 Va. Acts 411, 411-12. Because the juvenile court was in session at the time of Durrette's arrest, the sheriff's deputies put the defendant "in jail for safekeeping . . . until after lunch." *Durrette*, 201 Va. at 740, 113 S.E.2d at 846. When they returned less than two hours later, they learned that the defendant had confessed. *Id.* They then obtained a commit-

ment order from a justice of the peace, and two days later the juvenile court issued a detention order. *Id.* at 741, 113 S.E.2d at 846-47. On appeal, the Court held the following:

> While it cannot be said that the defendant's arrest and detention were in strict conformity with all the provisions of the Code sections referred to above, the deviations therefrom cannot fairly be said to have deprived the defendant of any constitutional right . . . .
>
> The statutes referred to are of a procedural nature and the manner of arresting, transporting and incarcerating the defendant shown by the evidence in this case did not, as stated, deprive him of any constitutional rights.

*Id.* at 742, 113 S.E.2d at 847. The Court conducted a separate inquiry to determine whether the defendant's confession had been voluntarily made and concluded that it had been. *Id.* at 742-45, 113 S.E.2d at 847-49.

Although Article 4 of Title 16 was subsequently revised and former Code § 16.1-197 was recodified at Code § 16.1-247, *see* Act of March 31, 1977, 1977 Va. Acts 839, 847-48, we find nothing which would indicate that the legislature intended to abrogate the principles set forth in *Durrette.* The version of Code § 16.1-247 in effect at the time of appellant's arrest and confession covered several different categories of detention, including not only juveniles detained under a criminal warrant or on probable cause but also juveniles "alleged to be in need of services or supervision" where "there is a clear and substantial danger to the child's life or health or . . . [where] the assumption of custody is necessary to ensure the child's appearance before the court." Code § 16.1-246(B). Pursuant to Code § 16.1-247(A), the custodian of a juvenile held under a detention order or criminal warrant, "during such hours as the court is open, shall, with all practicable speed . . ., bring the child to the judge or intake officer of the court . . ., [who] shall, [in] the most expeditious manner practicable, give notice of the action taken . . . to the child's parent." If the court is not open, however, the child may be released on bail or personal recognizance, or placed in a detention home or in jail. Code § 16.1-247(D). If the child is detained, "[he] shall be brought before a judge on the next day on which the court sits . . . [or]

within a reasonable time, not to exceed seventy-two hours, after he had been taken into custody." Code § 16.1-250(A). If that period expires on a weekend or legal holiday, it may be extended further. *Id.* Although Code § 16.1-250(C) states that the judge shall advise the parties of the right to counsel and the right to remain silent during the detention hearing, it contains nothing to indicate a presumption that these rights have been violated simply because the hearing is not held immediately following the juvenile's detention. Based on *Durrette*, we conclude that Code § 16.1-247 and the related provisions of Article 4 are procedural only and that any failure to adhere to those provisions did not result in a *per se* violation of appellant's Fifth or Sixth Amendment rights.

For the reasons discussed in sections I and II above, we hold that appellant's constitutional rights were not violated, and we affirm his convictions.

*Affirmed.*

Willis, J., and Duff, S.J., concurred.