A Rehearing En Banc was granted for this case on June 28, 1995.

COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Bray
Argued at Norfolk, Virginia

TERRELL HICKMAN

v.          Record No. 1993-93-1          MEMORANDUM OPINION* BY
                                          JUDGE RICHARD S. BRAY
COMMONWEALTH OF VIRGINIA                      MAY 23, 1995

             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Leonard B. Sachs, Judge

             B. Cullen Gibson for appellant.

             Monica Sergent, Assistant Attorney General
             (James S. Gilmore, III, Attorney General;
             Donald R. Curry, Senior Assistant Attorney
             General, on brief) for appellee.


        Terrell Hickman (defendant), a juvenile transferred for a

trial as an adult, was convicted of first-degree murder and

sentenced to life imprisonment.  On appeal, defendant complains

that the trial court erroneously overruled his motion to suppress

his confession.  We disagree and affirm the conviction.

        The parties are fully conversant with the record in this

case, and we recite only those facts necessary to explain our

holding.

        "In order for a confession given during a custodial

interrogation to be admissible at trial, the Commonwealth must

show that the accused was apprised of his right to remain silent

and that he knowingly, intelligently, and voluntarily elected to

waive that right."  Roberts v. Commonwealth, 18 Va. App. 554,

---

*Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

557, 445 S.E.2d 709, 711 (1994). A "heavy burden rests upon the Commonwealth" to establish a "valid waiver," and the "[c]ourts must indulge every presumption against" it. Grogg v. Commonwealth, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988).

"[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992). The voluntariness issue, however, is a question of law which requires "an independent [appellate] examination of the totality of the circumstances to determine 'whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overbourne and his capacity for self-determination critically impaired."'" Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992) (citations omitted). "[I]n making that determination, we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Id.

If the accused is a juvenile, we must consider "'the juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" Roberts, 18 Va. App. at 557, 445 S.E.2d at 711 (citations omitted). While we have recognized the presence of a parent or other "interested

adult" as a significant consideration in assessing voluntariness of a juvenile's confession to criminal conduct, we have also consistently held "that the mere absence of a parent . . . does not render a [juvenile's] waiver invalid." Grogg, 6 Va. App. at 613, 371 S.E.2d at 557.

Here, before undertaking interrogation of defendant, Detective Squyres attempted unsuccessfully to contact defendant's father by telephone[1] and properly advised defendant of his Miranda rights, using a "legal rights advice" form. Defendant assured Squyres that he could "read and write" and read aloud "the first right" from the form to confirm his literacy. Defendant dated the form correctly and wrote "yes" in response to each inquiry, rewriting one answer to improve its neatness. The interview began at 11:18 p.m., and defendant had confessed within "fifteen or twenty minutes." Squyres advised defendant that a "taped statement" was required, and defendant confessed "all over again," finishing at 12:00 a.m.

Squyres then delivered the tape to a "stenographer," and a transcript was prepared and provided to defendant. Defendant reviewed the typed statement, noted and corrected several errors, initialed the "top and bottom" of each page, and signed it at 4:28 a.m. While awaiting the transcript, defendant was alone in an "interview room," which was furnished with a desk and chairs. Squyres "checked in on him" a "couple of times," once observing

---

[1]When defendant's father was contacted later in the evening, he refused to "com[e] down."

defendant's "head down on the desk," and offered to "buy him a soda."

Squyres described defendant as "a very sharp man," "certainly very streetwise," and "very alert, very awake," and "very articulate."  He recalled that defendant had "no problem at all reading" the rights form, was "very smooth, no hesitation."  Defendant similarly read "right through" the typed statement, stopping only when he "wanted to change something."

Although defendant's psychological testing placed him in the "mental retardation" range,[2] Dr. Thomas Pasquale, a Clinical Psychologist, concluded that defendant's "level of intellectual functioning is more accurately . . . in the borderline to low average range" because the scores were "depressed" by defendant's "sabotage" of the testing.  At the time of the interview, defendant was in the eighth grade at public school.

Defendant testified that he "didn't get that much sleep" and was "hungry" during the interrogation period.  He had no prior experience with police questioning and recalled that he "was scared," "didn't really understand" his Miranda rights, and spoke to Squyres only to avoid the "detention home."  He acknowledged reading, correcting, and initialing the "rights form" and statement.  Defendant's father testified that he had "mental problems," academic difficulties, and often misunderstood "things."     Although the trial court initially suppressed

_____

[2] "Verbal IQ of 74," "performance IQ of 61," and "Full Scale IQ of 67."

defendant's confession for reasons apparently attributed to defendant's intellectual deficits, "behavorial problems," and the absence of parent or legal guardian at the time of waiver, the trial judge subsequently reversed this decision after reviewing Wright v. Commonwealth, 245 Va. 177, 427 S.E.2d 379 (1993). In a letter opinion, the trial judge found the "facts of the Wright case . . . compellingly similar in almost every detail," "on 'all fours'" with the instant case, and concluded that defendant knowingly, intelligently, and voluntarily waived his Miranda rights. We agree.

Applying the appropriate standards of review, we find that the record provides ample support to the trial court's determination that defendant knowingly and intelligently waived his Miranda rights. Similarly, our independent review of the evidence also supports the related finding that the waiver was voluntary. The testimony of both Dr. Pasquale and Squyres describe an alert and perceptive young defendant, fully cognizant of his circumstance and intellectually capable of comprehending and coping with those considerations attendant to a voluntary waiver of his constitutional rights. See Wright, 245 Va. at 184-86, 427 S.E.2d at 385-86.

Accordingly, we find that the trial court properly allowed defendant's confession into evidence and affirm the conviction.

Affirmed.

BENTON, J., dissenting.

Following an evidentiary hearing on Hickman's motion to suppress his statement, the trial judge found that Hickman had not voluntarily and intelligently made the statement, and he suppressed the statement. The trial judge later admitted the statement because he concluded that Wright v. Commonwealth, 245 Va. 177, 427 S.E.2d 379 (1993), required him to find as a matter of law that the confession was voluntary and intelligently made. I would reverse the trial judge's failure to suppress the confession.

"If the interrogation [occurs] without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475 (1966). Likewise, the burden is on the government "to prove, by a preponderance of the evidence, that [the defendant's] statement was voluntary." Williams v. Commonwealth, 234 Va. 168, 172, 360 S.E.2d 361, 364 (1987), cert. denied, 484 U.S. 1020 (1988). The Supreme Court "has always set high standards of proof for the waiver of constitutional rights." Miranda, 384 U.S. at 475. See Johnson v. Zerbst, 304 U.S. 458 (1938).

"The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and

unconstrained choice by its maker,' or . . . whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381, cert. denied, 464 U.S. 873 (1984) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). "In determining whether the waiver was knowing and intelligent, the court must examine the totality of the circumstances." Roberts v. Commonwealth, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994).

The Supreme Court has noted that "admissions and confessions of juveniles requires special caution." In re Gault, 387 U.S. 1, 45 (1967). Thus, when a juvenile is involved, the inquiry into the circumstances of the interrogation must include "evaluation of the juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequence of waiving those rights." Fare v. Michael C., 442 U.S. 707, 725 (1979). Indeed, the Court has recognized that with juveniles "we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protest his own interests or how to get the benefits of his constitutional rights." Gallegos v. Colorado, 370 U.S. 49, 54 (1962). Under the best of circumstances, a sixteen year old "boy, no matter how sophisticated is unlikely to have any conception of what will confront him when he is made accessible

– 7 –

only to the police." Id. Thus, the absence of a parent is "a circumstance that weigh[s] against the admissibility of the confession." Miller v. Maryland, 577 F.2d 1158, 1159 (4th Cir. 1978). A juvenile's lack of "previous exposure to the criminal justice system" is also a factor that weighs against a finding of voluntariness. Green v. Commonwealth, 223 Va. 706, 710, 292 S.E.2d 605, 608 (1982).

The trial judge's initial finding that the Commonwealth had "failed to meet its burden" to prove the waiver of Hickman's rights is supported by the record. Hickman was sixteen years of age when he was questioned. He was in the interrogation room for six hours without food or liquids. He was questioned in the absence of his parent or other relative. Moreover, no evidence proved that Hickman had any prior experience with the police.

The psychologist who reported to the trial judge regarding Hickman's mental status noted that Hickman's full scale IQ was "67 (mental retardation)." Hickman's test scores placed him in the bottom 2.2 percent of the population. The evaluation indicated that Hickman's "subtest profile is essentially consistent in the well below average intellectual functioning." The psychologist also reported that Hickman was "much younger than his stated age, both physically and emotionally," and that he displayed "grand immaturity." He also informed the trial judge that Hickman's "demonstrated reading ability is rather primitive."

Although the psychologist had the "impression that

[Hickman's] level of intellectual functioning is more accurately perceived as being in the borderline to low average range," the trial judge found that distinction not to be significant when he initially suppressed the statement.  Indeed, the record contains a report from Hickman's middle school which established that Hickman's test score two years earlier also indicated mental retardation and placed him in the bottom 2 percent of the population.  That report states that Hickman "appears capable of achieving only near a low 6th grade level."

The school records also report that Hickman dropped out of school in the fourth grade.  When he returned to school in 1991, he tested in the mental retardation range and was placed in a class for learning disabled students.  Although Hickman was in an eighth grade class for students who are learning disabled, he was placed at that level only because of his age.  The school psychologist stated that "he is too old to enroll in all 6th grade classes, despite his small size" and "that special education services should be considered for him."

This evidence proved that Hickman's actual mental capacity was such that he was not able to comprehend the rights that he waived.  He was mentally retarded and functioned below the intellectual level of a sixth grade child.  In reading comprehension, Hickman was "generally achieving . . . on 3rd to 4th grade levels . . . with 63% comprehension."  He also lacked the ability to grasp abstract concepts.  A psychologist reported that Hickman had "a learning difficulty making it difficult for

him to grasp concepts."  The officer's testimony that Hickman answered that he understood his <u>Miranda</u> rights did not rebut the evidence of Hickman's lack of intelligent capacity to understand the waiver.  <u>See</u> <u>Cooper v. Griffin</u>, 455 F.2d 1142 (5th Cir. 1972).

The evidence in this case is contrary to the facts upon which the Court relied in finding voluntariness in <u>Wright v. Commonwealth</u>, 245 Va. 177, 427 S.E.2d 379 (1993).  The trial judge made no findings that Hickman was not mentally retarded.  Moreover, none of the other factual circumstances proved in <u>Wright</u> applied to Hickman.  Finding in <u>Wright</u> that the evidence proved that Wright's statement was not involuntary, the Court stated:

> Wright had experienced a number of prior arrests.  He knew that he had a right to remain silent, to have a lawyer present, and that what he said could be used against him at trial.

<u>Id.</u> at 184, 427 S.E.2d at 385.  None of these apply to Hickman.

In finding that the recitation of <u>Miranda</u> warnings cannot overcome circumstances that facially negate voluntariness, the United States Supreme Court stated:

> Petitioner had been in the continuous custody of the police for over eight hours and had not been fed at all during that time.  He had not been given access to family, friends, or counsel at any point.  He is an illiterate, with only a third grade education, whose mental capacity is decidedly limited.  Under such circumstances the fact that the police may have warned petitioner of his right not to speak is of little significance.

<u>Sims v. Georgia</u>, 389 U.S. 404, 407 (1967).

The trial judge correctly found that the evidence did not overcome the Commonwealth's heavy burden to prove waiver. Nothing in <u>Wright</u> required a different finding.  For these reasons, I would reverse the refusal to suppress the evidence.