COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


JEFFREY NELSON RIDDICK

v.          Record No. 0155-95-1            OPINION BY
                                        JUDGE RICHARD S. BRAY
COMMONWEALTH OF VIRGINIA              MARCH 19, 1996


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   Thomas R. McNamara, Judge

            Fay F. Spence for appellant.

            Monica S. McElyea, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Jeffrey Nelson Riddick (defendant) was convicted by a jury

for robbery in violation of Code § 18.2-58.  On appeal, defendant

complains that the trial court erroneously denied his motions to

suppress his inculpatory statements to police and to dismiss the

indictment for violations of defendant's statutory and

constitutional rights of speedy trial.  Finding no error, we

affirm the conviction.

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358

S.E.2d 415, 418 (1987).

     Defendant was arrested for the subject offense on July 7,

1993, at 12:43 a.m. by Norfolk Police Officer Roger Hungerford.

Hungerford immediately advised defendant of his Miranda rights,

and defendant refused even to identify himself. Later, at Police Operations Center, Investigator W. T. Old presented defendant with a standard police "Legal Rights Advice Form,"[1] confirmed that defendant could "read and write," and asked him to "follow along" as Old read aloud each "right" printed on the form. Defendant affirmatively acknowledged all the admonishments seriatim until he reached number six, writing, "no," beside the affirmation, "I further state that I waive these rights and desire to make a statement." The following exchange then occurred between Old and defendant:

Old: "[Y]ou do not want to talk to me, Mr. Riddick?"

Defendant: "[N]o, I misunderstood, I want to talk to you."

Old: "[W]ell, you signed no to [the form]."

Defendant: "[W]ell, I want to talk to you."

Old then produced a second form, which defendant completed and signed at 2:48 a.m., three minutes after the first, waiving each of the enumerated rights and agreeing "to make a statement." During subsequent conversation with Old, defendant denied involvement in the offense, and the interview concluded at "4:00 or 4:30 a.m.," when defendant stated "he didn't want to talk anymore right then but . . . wanted us to talk . . . later in the day . . . ."

In the early afternoon of the same day, police investigator

---

[1]The compliance of this form with the requirements of Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny is not in issue.

David E. Hill visited defendant in jail to obtain a photograph and asked defendant if he "wished to talk to [him]." When defendant stated that he would "talk . . . at this time," Hill reviewed the same standard form with defendant, and he once again waived his rights. During the ensuing interview, defendant confessed to the crime.

On August 4, 1993, the Norfolk General District Court found probable cause to believe that defendant committed the robbery and several additional offenses. However, although a grand jury indicted defendant on September 1, 1993, for the other offenses, it did not return a "true bill" on the subject robbery.[2] Trial on the indictments for the other offenses was thereafter scheduled for September 10, 1993, continued to December 21, 1993, and, later, postponed again until March 1, 1994. On January 5, 1994, another grand jury indicted defendant for the robbery, and trial was also set for March 1, 1994. On March 1, 1994, these trials were continued, on motion of defendant, to May 12, 1994. Defendant remained in custody throughout this period.

On May 12, 1994, defendant, accompanied by counsel, appeared before the court, was arraigned on the robbery and the other offenses, and entered pleas of guilty pursuant to a plea agreement with the Commonwealth. See Rule 3A:8(c)(1)(C),(c)(2). The order which memorializes this proceeding recites that the

_____

[2]The words "not a true bill" were written across the face of the indictment form.

- 3 -

court "heard the evidence of the attorney for the Commonwealth, none being offered on behalf of the defendant," retained "the matter . . . under advisement" and ordered the preparation of a presentence report, withholding "acceptance of said [a]greement until . . . a sentencing hearing . . . ." See Rule 3A:8(c)(2).

The proceedings reconvened on July 14, 1994. The presentence report was then before the court, and both defendant and the Commonwealth urged the court to accept the terms of the plea agreement. The trial court, however, rejected the agreement, which prompted defendant to withdraw the guilty pleas and necessitated the assignment of another judge to the cases in accordance with Rule 3A:8(c)(4). After an alternate judge was designated in "late" August, the proceedings were scheduled to resume on October 27, 1994. On October 26, 1994, defendant moved the court to dismiss the charges, arguing violations of both statutory and constitutional rights of speedy trial. The following day, the proceedings were continued, on joint motion of defendant and the Commonwealth, to November 17, 1994, and, later, continued once again to January 12, 1995, on motion of the Commonwealth.

I. STATUTORY RIGHT TO SPEEDY TRIAL

Code § 19.2-243 provides, in pertinent part, that

> the accused, if . . . held continuously in custody thereafter, shall be forever discharged from prosecution . . . if <u>no trial is commenced</u> in the circuit court within five months from the date . . . probable cause was found by the district court . . . .

> If there was no preliminary
> hearing . . . , the running of the five . . .
> months . . . shall be from the date an
> indictment or presentment is found against
> the accused.

(Emphasis added).  "The five month requirement of Code § 19.2-243 translates to 152 and a fraction days."  Ballance v. Commonwealth, 21 Va. App. 1, 6, 461 S.E.2d 401, 403 (1995).

Here, a grand jury initially failed to indict defendant for the robbery.  "This action . . . operated to discharge [defendant] on the charge . . . ."  Presley v. Commonwealth, 2 Va. App. 348, 351, 344 S.E.2d 195, 196 (1986).  However, prosecution on the other offenses moved forward, and defendant remained in custody.  Meanwhile, on January 5, 1994, another grand jury indicted defendant for the instant robbery.  "'[W]hen an original indictment [returned "not a true bill"] is supplanted by a second indictment, the terms contemplated by the [speedy trial] statute are to be counted from the time of the second indictment.'"  Id. at 350-51, 344 S.E.2d at 196 (quoting Brooks v. Peyton, 210 Va. 318, 322, 171 S.E.2d 243, 246 (1969)); Arnold v. Commonwealth, 18 Va. App. 218, 221, 443 S.E.2d 183, 185, aff'd en banc, 19 Va. App. 143, 450 S.E.2d 161 (1994) ("A new indictment [constitutes] a new charge, distinct from the original charge or indictment.").  Thus, January 5, 1994, signaled the beginning of the speedy trial period on the robbery offense.  See Harris v. Commonwealth, 21 Va. App. 347, 349-50, 464 S.E.2d 516, 517 (1995).

Trial on the robbery was delayed from January 5, 1994, to March 1, 1994, and from March 1, 1994, to May 12, 1994, a total of 127 days. The record reflects that on May 12, 1994, defendant appeared with counsel, was arraigned on the offense, tendered a guilty plea, and evidence was presented to the trial court. Defendant's argument that these proceedings did not constitute the commencement of trial within the intendment of Code § 19.2-243 is without merit.

Article I, Section 8 of the Virginia Constitution provides that, "[i]n criminal cases, the accused may plead guilty," and "[i]n case of such . . . plea of guilty, the court shall try the case." (Emphasis added). Code § 19.2-257 directs that "[u]pon a plea of guilty in a felony case, tendered in person by the accused after being advised by counsel, the court shall hear and determine the case without the intervention of a jury . . . ." (Emphasis added). The court, therefore, must "try," "hear" and "determine" the case upon a guilty plea, undertakings which clearly commence trial. Moreover, it is well established that "'[t]he trial of a criminal case begins with the arraignment . . . , and ends with the sentence pronounced upon him by the court.'" Burnley v. Commonwealth, 208 Va. 356, 362, 158 S.E.2d 108, 112 (1967) (quoting Gilligan's Case, 99 Va. 816, 827, 37 S.E. 962, 965 (1901)). It includes "'every stage of the [proceeding] from . . . arraignment to . . . sentence, when anything is to be done which can affect [defendant's] interest.'"

Jones v. Commonwealth, 227 Va. 425, 428, 317 S.E.2d 482, 483 (1984) (quoting Palmer v. Commonwealth, 143 Va. 592, 605, 130 S.E. 398, 402 (1925)).

Thus, the proceedings of May 12, 1994, commenced the robbery trial within the intendment of Code § 19.2-243. The subsequent procedural history reflects "an extension of that same proceeding, based upon the same indictment and process and following a regular, continuous order." Morgan v. Commonwealth, 19 Va. App. 637, 639, 453 S.E.2d 914, 915 (1995). While the proceedings were attended by delay, "Code § 19.2-243 requires the timely commencement of trial[,] . . . not . . . that trial be concluded within the specified time." Id. at 640, 453 S.E.2d at 915; see Rule 3A:8(c); see also Howell v. Commonwealth, 186 Va. 894, 898, 45 S.E.2d 165, 166-67 (1947).

II. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

Defendant also asserts violations of his right of speedy trial guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 8 of the Virginia Constitution.[3] In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court, "recognizing the difficulty in evaluating speedy trial claims, adopted a balancing test" which "identified four factors to be assessed by courts in determining

---

[3]For purposes of this appeal, we do not distinguish between the speedy trial guaranteed by both state and federal constitutions. See Holliday v. Commonwealth, 3 Va. App. 612, 615-16, 352 S.E.2d 362, 364 (1987).

whether a particular defendant has been deprived of his speedy trial right:  (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant."  Holliday, 3 Va. App. at 616, 352 S.E.2d at 364.

Among these factors, the length of delay is the "mechanism" which "trigger[s]" an examination of the remaining considerations.  Barker, 407 U.S. at 530.  If the delay is not shown to be "presumptively prejudicial," there is no necessity for "inquiry into the other factors that go into the balance." Fowlkes v. Commonwealth, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978); Beachem v. Commonwealth, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990) ("A defendant must be able to at least raise the presumption that the delay . . . was so detrimental as to have endangered his right to a fair trial.").  Manifestly, the period from defendant's indictment on January 5, 1994, to the commencement of trial on May 12, 1994, was not "presumptively prejudicial," and nothing in the record suggests otherwise.  We, therefore, find it unnecessary to address the remaining factors in the Barker analysis.

III. FIFTH AMENDMENT RIGHT TO REMAIN SILENT

"In order for a confession given during a custodial interrogation to be admissible at trial, the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily elected to

waive that right." Roberts v. Commonwealth, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994); see also Lamb v. Commonwealth, 217 Va. 307, 310, 227 S.E.2d 737, 740 (1976). "If the individual indicates . . . that he wishes to remain silent, the interrogation must cease," Miranda, 384 U.S. at 473-74, and police must "'scrupulously honor[]' that right." Pugliese v. Commonwealth, 16 Va. App. 82, 87-88, 428 S.E.2d 16, 21 (1993) (citing Michigan v. Mosley, 423 U.S. 96, 102-04 (1975)). "Whether a person's decision to remain silent has been 'scrupulously honored' requires an independent examination of the circumstances." Id. at 88, 428 S.E.2d at 21 (citing Mosley, 423 U.S. at 104-05).

We agree with defendant that "[a] statement procured in violation of Mosley is presumed to have been obtained by an involuntary waiver of Fifth Amendment rights and, therefore, . . . inadmissible." Id. However, police activities reasonably incidental to arrest and custody, which are unlikely to elicit an "incriminating response," do not infringe upon the rights of a suspect. Rhode Island v. Innis, 446 U.S. 291, 301 (1980); see Lamb, 217 Va. at 312, 227 S.E.2d at 741.

Here, defendant's negative response to the printed declaration, "I further state that I waive these rights and desire to make a statement," merely prompted Investigator Old to ask, "[Y]ou do not want to talk to me, Mr. Riddick?" The subsequent exchange clearly reflected that defendant

- 9 -

"misunderstood" the waiver form and, contrary to his written answer, "want[ed] to talk" to Old.  As a result, a second form was immediately completed by the defendant, which waived all Miranda rights, including the right to remain silent.  Under such circumstances, Old's effort to confirm defendant's initial answer constituted neither impermissible interrogation nor coercion in violation of Mosley.

When Detective Hill approached the defendant the following afternoon and inquired if defendant wished to speak with him, defendant answered affirmatively, once again expressly waiving his rights by execution of a waiver form.  This conduct was consistent with defendant's earlier indication that he wished to talk with police "later in the day."  We, therefore, find no constitutional impediment to the introduction of defendant's confession in evidence.

Lastly, defendant asserts that the "confession was not voluntary and that his will was overborne by the . . . police."  This is a question of law which requires "an independent [appellate] examination of the totality of the circumstances to determine 'whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired."'"  Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992) (citations omitted).  "[S]uch circumstances can be grouped into

two categories:  (1) factors relating to the physical and psychological condition of the suspect, and (2) factors relating to police tactics used during interrogation."  Ronald J. Bacigal, Virginia Criminal Procedure § 7-2, at 130 (3d ed. 1994).

The record discloses that defendant was twenty-nine years of age at the time of arrest for the subject offense.  He had withdrawn from school in the tenth grade and thereafter maintained sporadic employment while regularly engaging in the abuse of substances, including alcohol, marijuana, and cocaine.  Defendant's adverse contacts with the criminal justice system date from 1977 and include both misdemeanor and felony arrests and convictions, with related periods of probation, incarceration, and parole.  The record reflects no evidence of intellectual or physical deficits.  Defendant was taken into custody at 12:43 a.m. and interviewed by Investigator Old for less than two hours.  When visited by Investigator Hill the following afternoon, defendant was "acting normal, nothing unusual."

Defendant testified that his statements to police were induced by promises of "help" with the "charges" and his "drug problem" and threats to "make [him] burn for all the charges." Despite his efforts to terminate the interview, "[t]hey kept talking," and defendant finally spoke "because [he] was scared."

Our review of the record reveals an alert and perceptive defendant, familiar with criminal investigations, arrest and

incarceration, fully cognizant of his circumstances and those considerations appropriate to a voluntary waiver of his constitutional rights.  Defendant's account of the interviews is disputed by other evidence and unsupported by the record.  We, therefore, find that defendant's confession was obtained pursuant to the instructions of <u>Miranda</u> and properly admitted into evidence.

Accordingly, the conviction is affirmed.

<u>Affirmed.</u>