# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

James Edward DeWitt

BY JUDGE MARC JACOBSON

January 30, 2001

Case No. CR00002140

James Edward DeWitt was charged with rape, sodomy, abduction, sexual battery, and firearms offenses, arising out of an incident on January 31, 2000. Defendant was arrested on February 6, 2000, for the charges and transported to the Norfolk Police Operations Center, where Investigator Rumley of the Norfolk Police Department and Officer Knowles of the Virginia Beach Police Department advised Defendant of his legal rights, using the Norfolk Police Department standard form PD 381 (form). Rumley read the form to Defendant, and Defendant initialed each line after completing the questions asked by Rumley. Following the recitation of his legal rights, Defendant made certain statements to the police that are now the subject of Defendant's Motion to Suppress (Motion). Defendant argues that during the course of completing the form he invoked his right to counsel, and, therefore, a subsequent statement is inadmissible as being taken in violation of Defendant's constitutional rights.

At the hearing on the Motion, Rumley testified relative to the form and the statements in question. Question (6) on the form stated that Defendant waived his legal rights and desired to make a statement. Defendant "immediately indicated yes, he did . . ." in response to that question. At that time, Defendant asked whether he would be waiving his right to an attorney in the future. *See* Transcript, p. 7, ll. 12-13. Rumley explained that Defendant "was waiving his

right at this time so [they] could have a conversation in reference to the incident. . . ." *See* Transcript, p. 7, ll. 13-15. During the course of Rumley's explanation, Defendant wrote "no" in response to question (6), then scratched out "no" and wrote "yes." *See* Transcript, p. 7, ll. 15-17. Defendant, both verbally and in writing, ultimately indicated to Rumley that he wanted to make a statement. *See* Transcript, p. 8, ll. 1-3.

Knowles testified regarding his recollection of the events of February 6. Knowles recalled that Rumley read Defendant the form and that Defendant initialed his responses to the questions. Knowles's recollection of the conversation regarding question (6) on the form was substantially similar to Rumley's; Knowles testified that Defendant scratched out his answer to question (6) on the form and said that he wanted an attorney. *See* Transcript, p. 18, ll. 16-17. Rumley explained to Defendant "since he wanted an attorney that neither one of us could talk to him in reference to what we wanted to talk to him about." *See* Transcript, p. 18, ll. 18-20. After that, Defendant "indicated he did want to talk, but he wanted to make sure he wasn't losing his right to an attorney at a later time." *See* Transcript, p. 18, ll. 22-24. Knowles testified that Defendant affirmatively indicated his willingness to speak to the officers without counsel. *See* Transcript, p. 19, ll. 3-4.

Both officers indicated that no threats were used against Defendant and that Defendant was promised nothing for his statement, *see* Transcript, p. 9, l. 25, to p. 10, l. 1, p. 19, ll. 20-22. Both also testified that, other than the statement regarding question (6) on the form, Defendant never mentioned his desire to contact an attorney. Defendant argues that he clearly and unambiguously invoked his right to counsel, therefore, his statements were illegally obtained and inadmissible. At the hearing, Defendant's counsel argued that the statements of Rumley and Knowles were contradictory, in that Knowles testified that Defendant asked for a lawyer in regard to question (6) on the form and Rumley testified that he did not do so. It appears that the difference between the testimony of the officers was one of semantics — both testified to virtually similar facts regarding question (6). The only difference in the testimony is that Knowles characterized Defendant's statement as asking for an attorney, whereas Rumley did not.

The case of *Giles v. Commonwealth*, 28 Va. App. 527, 531, 507 S.E.2d 102 (1998), references the landmark case of *Edwards v. Arizona*, 451 U.S. 477, 484-87, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), where the United States Supreme Court stated "once an accused asserts the right to counsel, all interrogation must cease until counsel is present, or until the accused initiates further discussion or interrogation."

*Giles* refers to a three-part test to evaluate the admissibility of a statement under the *Edwards* rule.

> First, the trial court must determine whether the accused "unequivocally" invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel.

*Giles*, 28 Va. App. at 532, 507 S.E.2d 102.

Additionally, "police may legitimately inquire whether a suspect has changed his mind about speaking to them without an attorney." *Edwards*, 451 U.S. at 490, 101 S. Ct. at 1887-88 (Powell, J., and Rehnquist, J., concurring).

Under the first prong of the *Giles* test, the Court must determine whether Defendant clearly and unequivocally invoked his right to counsel. The extent of Defendant's comments inquiring about legal representation according to Rumley and Knowles centered around his ability to obtain counsel at a later date, and not for the purpose of the questioning at the time he signed the legal rights form. Defendant did not ask for an attorney at the time he was questioned, but merely "wanted to make sure he wasn't losing his right to an attorney at a later time." After the detectives told Defendant they could no longer proceed with the discussion, Defendant reinitiated discussion through his inquiries. This dialogue does not amount to an unequivocal assertion of Defendant's right to counsel or request for counsel prior to making these statements which Defendant now seeks to suppress.

Defendant's possible confusion or question about the consequences of the legal rights form was the issue he desired to resolve when he made inquiries about his legal representation. The Virginia Court of Appeals has examined a similar situation in the context of the right to remain silent in *Riddick v. Commonwealth*, 22 Va. App. 136, 468 S.E.2d 135 (1996). There, the defendant was being read a standard police form advising Defendant of his legal rights when he became confused about a statement identical to the one at issue here in question (6) of the legal rights form. The defendant first responded negatively to the question, which prompted the officer to inquire whether the defendant wanted to talk. Thereafter, the defendant said, "No, I misunderstood, I want to talk to you." *See Riddick* at 140. A new form was produced and the defendant therein indicated his desire to make a statement.

In *Riddick,* defense counsel argued that the defendant did not voluntarily waive his Fifth Amendment right to remain silent and that his subsequent confession should be suppressed. The Court of Appeals disagreed, stating that following the defendant's confusion or question:

> the subsequent exchange clearly reflected that defendant "misunderstood" the waiver form and, contrary to his written answer "wanted to talk" to Old. As a result, a second form was immediately completed by the defendant, which waived all *Miranda* rights, including the right to remain silent. Under such circumstances, Old's effort to confirm defendant's initial answer constituted neither impermissible interrogation nor coercion in violation of *Mosley.*

*Riddick* at 145-46, citing *Michigan v. Mosley,* 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975) (discussing that, when a defendant claims a statement was taken in violation of his or her Fifth Amendment right to remain silent, an examination of the circumstances surrounding the statement is required).

In the instant case, as in *Riddick,* the officer reading Defendant his legal rights sought merely to confirm Defendant's answer. Following the officer's attempt to clarify the form, Defendant voluntarily changed his answer to question (6) and went on to answer more questions about waiving his legal rights and eventually to sign the form. Defendant's personal retraction of his "no" answer to the question, along with his subsequent answers and signing of the form, is not appreciably different from the situation in *Riddick* where a second form was completed. The form in the instant case as finished represents Defendant's voluntary decision to make a statement to law enforcement officers, and his initial question or possible confusion was not an unequivocal assertion of his right to retain counsel.

Further, in order to invoke the *Edwards* rule, a "clear and unambiguous assertion of the right to counsel must be made." *Midkiff v. Commonwealth,* 250 Va. 262, 266, 462 S.E.2d 112 (1995). The courts of this Commonwealth have evaluated several statements in determining whether an accused invoked his right to counsel. Statements such as "I'm scared to say anything without a lawyer," "Do you think I need an attorney here," "You did say I could have an attorney if I wanted one," and "Didn't you say I have the right to an attorney," have been found not to invoke the *Edwards* rule. *See Midkiff* at 266, citing *Mueller v. Commonwealth,* 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992); *Eaton v. Commonwealth,* 240 Va. 236, 250, 397 S.E.2d 385, 393 (1990); *Poyner v. Commonwealth,* 229 Va. 401, 410, 329 S.E.2d 815, 823, *cert denied,* 474 U.S. 865, 106 S. Ct. 189, 88 L. Ed. 2d 158 (1985).

Additionally, the United States Supreme Court has determined that the statement "Maybe I should talk to a lawyer" was also not an invocation of the right to counsel. *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 2356-57, 129 L. Ed. 2d 362 (1994).

"If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [legal] precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362. It cannot be said that a reasonable officer would have understood that Defendant was clearly invoking his right to counsel during his confusion about the legal rights form. Defendant's statement "falls within the category of statements which do not clearly and unambiguously request an attorney." *Midkiff* at 267. The statements made by Defendant expressed a concern about counsel at a later date, but do not clearly and unambiguously invoke his right to counsel at the time of the interrogation. As such, the *Edwards* rule does not apply to exclude the resulting statements.

In any event, whether Defendant actually invoked his right to counsel has no bearing on the admissibility of the statements in question because Defendant affirmatively reinitiated discussion with the officers. As soon as Defendant indicated a negative response on the legal rights form, Rumley indicated that he no longer could speak to him because of his request for counsel. See *Miranda v. Arizona*, 384 U.S. 436, 474, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) ("The interrogation must cease until an attorney is present."). Immediately thereafter, Defendant reinitiated dialogue by indicating that he wanted to make a statement. *See* Transcript, p. 18, ll. 22-24. As in this case, if an "accused himself initiates further communication, exchanges, or conversations with the police," the accused makes a valid waiver of his right to speak only through counsel, and any resulting statements are admissible. *Edwards*, 451 U.S. at 485, 101 S. Ct. 1880, 68 L. Ed. 2d 378.

In the instant case, the totality of the evidence and circumstances surrounding the interrogation of Defendant indicates that Defendant did not affirmatively and unequivocally invoke his right to counsel by inquiring about his right to counsel during subsequent proceedings. Nevertheless, even if Defendant had unequivocally invoked his right to counsel, his subsequent statements as well as his ultimate indication on the rights form that he wanted to make a statement suggest that he reinitiated discussion and that the investigators did not. Following Defendant's questions about his ability to obtain an attorney, the investigators immediately advised Defendant that they could not speak with him any further, thereby fulfilling their obligation under

*Edwards*. Immediately thereafter, Defendant proceeded to inquire further of the officers, reinitiating the dialogue between them.

Under the second prong of the *Giles* test, Defendant reinitiated the dialogue between himself and the officers. See *Giles*, 28 Va. App. at 532, 507 S.E.2d 102. Because Defendant reinitiated contact with the law enforcement officers, his statements are therefore admissible if he waived his right to counsel knowingly and intelligently, as under the third prong of the *Giles* test. See *id*. Here, there was no evidence either that Defendant was promised anything for his statement or that he was threatened to make the statement. There was no evidence that Defendant's ability to make decisions for himself was compromised or that his will had been overborne by anyone. Defendant was read a form detailing his legal rights, including his right to remain silent and his right to an attorney. Defendant, in response to question (7) on the form stated, "yes," and initialed "The statement is completely free and voluntary on my part without any threat or promise from anyone." Defendant signed this form indicating that he understood these legal rights and desired to voluntarily waive them.

In considering and determining whether Defendant's statements are "the product of an essentially free and unconstrained choice . . . or whether the maker's will has been overborne and his capacity for self-determination critically impaired," *Roberts v. Commonwealth*, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (quoting *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381, *cert. denied*), the totality of circumstances and the evidence presented to this Court surrounding Defendant's assertions demonstrate that the statements were knowingly, voluntarily, and intelligently made. This Court rules that the statements are admissible, and Defendant's Motion to Suppress is denied.

June 8, 2001

Case No. CR00002660

James Edward DeWitt is charged with rape, sodomy, abduction, sexual battery, and firearms offenses, arising out of an incident which occurred on February 3, 2000 (February cases). On February 6, 2000, Defendant was arrested and transported to the Norfolk Police Operations Center. *See* Transcript of Proceedings, November 15, 2000 (Transcript), p. 5, ll. 15-17. There, Investigator Rumley of the Norfolk Police Department and Officer Knowles of the Virginia Beach Police Department advised Defendant of his legal rights, using the standard form known as PD381 (form). *See* Transcript,

p. 6, ll. 4-5. Rumley read the form to Defendant, and Defendant initialed each line after completing the questions asked by Rumley. Following the recitation of his legal rights, Defendant made certain statements that are now the subject of a suppression motion. Although initially Defendant may have marked question (6) on the form "no," Defendant subsequently crossed out "no" and wrote "yes." Apparently Defendant's main concern was that he might be denied the use of or waiving the right to an attorney "at a later time." *See* Transcript p. 18, ll. 22-24, and Transcript p. 19, ll. 3-4 (detailing Defendant's willingness to speak to Knowles and Rumley without counsel). Following the recitation of his legal rights, Defendant made certain statements that are now the subject of a suppression motion.

The statements in question were the subject of a prior suppression motion in a case involving a separate set of indictments brought against Defendant arising out of an incident on January 31, 2000 (January cases). In that prior motion, Defendant argued that he invoked his right to counsel during the course of completing the form, and any subsequent statement was inadmissible as being taken in violation of Defendant's constitutional rights. This Court at that time ruled that Defendant voluntarily initiated discussion with the officers involved, rendering his statements admissible. *See* Opinion dated January 30, 2001, [above].

In this case, Defendant argues that the statements are inadmissible for purposes of this set of charges because Defendant was questioned about both the January cases and the February cases during the same interrogation with police. Thus, Defendant argues, his waiver of the right to counsel was only effective as to one set of charges; when the discussion changed to encompass the second incident (February 3, 2000), Defendant alleges he was entitled to be read his Miranda rights a second time and the interrogating officers were required to obtain a second waiver from him. Defendant argues that since he was not "re-Mirandized," and did not execute two legal rights waivers, the statements are not admissible as to the instant charges.

Defendant bases much of his argument on the premise that the statements at issue in the January charges were discussed first, pursuant to Defendant's written waiver, and that the February charges, the instant set of charges, were discussed subsequently. Accordingly, Defendant argues that he should have been Mirandized a second time following the initial discussion. *See* Transcript, p. 28, ll. 5-11 ("Mr. Cejas: . . . He was charged in Virginia Beach and they stem from the statement they took from him when there was a break in the conversation. Knowles talked to him by himself. He certainly should have been Mirandized at that point."). Nevertheless, there was no evidence

elicited at the suppression hearing in the first case as to when each charge was discussed. *See* Transcript.

Both Knowles and Rumley were present from the inception of Defendant's questioning. *See* Transcript, p. 5, ll. 20-22. The legal rights form signed by Defendant was signed by both officers, and both officers were present when Defendant was informed of his rights. *See* Transcript, p. 18, ll. 3-8. Defendant intelligently and voluntarily waived his rights when both officers were present and certainly was or should have been aware that both officers would question him. No evidence was elicited that the officers indicated Defendant would only be questioned about one set of charges, and Defendant had every opportunity to terminate the interrogation once he was questioned about the February cases had he desired to do so. Defendant did not ask that the interrogation cease and there was no requirement that he be Mirandized a second time.

The circumstances surrounding Defendant's assertions demonstrate and are indicative that the statements of Defendant were voluntarily, knowingly, and intelligently made.

The Court rules that the statements are admissible, and Defendant's Motion to Suppress is denied.